Richard E. BOSTON, Bankruptcy Trustee on behalf of Kelly and Randall Shook, Appellants–Plaintiffs,

v.

GYN, LTD and James E. Szymanowski, M.D., Appellees–Defendants.

No. 89A05–0206–CV–270.

Court of Appeals of Indiana.

April 8, 2003.

Karen B. Neiswinger, Indianapolis, IN, Attorney for Appellants.

Nana Quay–Smith, Karl L. Mulvaney, Candace L. Sage, Kelly R. Eskew, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellee.

John David Hoover, Sara Stites Fanzini, Hoover Hull Baker & Heath LLP, Indianapolis, IN, Attorneys for Appellee, James E. Szymanowski, M.D.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Kelly and Randall Shook (collectively, the Shooks), appeal from the trial court's grant of summary judgment in favor of Appellees–Defendants, Dr. James Szymanowski (Dr. Szymanowski) and GYN, Ltd., (GYN).[1]

We affirm.

---

1. GYN, Ltd., is Dr. Szymanowski's employer.

## ISSUES

The Shooks raise one issue on appeal, which we restate as follows: whether the trial court erred in granting summary judgment in favor of Dr. Szymanowski and GYN.

## FACTS AND PROCEDURAL HISTORY

The facts in the light most favorable to the Shooks establish that on March 13, 1991, Dr. Szymanowski performed a laparoscopic tubal sterilization by Hulka clip on Kelly Shook (Shook). Hulka clips are placed on a woman's fallopian tubes to prevent eggs from passing down the tube and becoming fertilized, thereby preventing pregnancy. Shook was twenty-five years old at the time of surgery.

Approximately four years later, Shook returned to Dr. Szymanowski complaining of heavy menstrual bleeding. Attempts to control the bleeding with medication were unsuccessful. As a result, on May 30, 1996, Dr. Szymanowski performed a hysteroscopy, a dilation and curettage (D & C), and a diagnostic pelviscopy of Shook.[2] Dr. Szymanowski observed the Hulka clips on each fallopian tube during the pelviscopy.

Shook continued to experience heavy menstrual bleeding subsequent to the scope procedure and D & C. Thereafter, on July 8, 1996, Dr. Szymanowski performed a vaginal hysterectomy on Shook. This procedure involved removing the uterus through the vagina and leaving the fallopian tubes and ovaries in place.[3] Be-

cause Shook was unable to have children without her uterus, the Hulka clips used previously to prevent pregnancy were no longer necessary. During the procedure, Dr. Szymanowski removed the Hulka clip from Shook's left fallopian tube. However, Dr. Szymanowski was unable to access the area of the right fallopian tube in order to remove the Hulka clip on the right side.

On July 30, 1996, Shook returned to Reid Memorial Hospital (Hospital) complaining of right lower quadrant abdominal pain. Although a pelvic ultrasound showed a soft tissue mass involving her right ovary, hospital reports drew no conclusion as to whether this was the source of her pain. Shook followed up the Hospital visit with visits to Dr. Szymanowski on August 7, 1996, August 22, 1996, and September 6, 1996, complaining of continued right lower quadrant abdominal pain.

On September 12, 1996, Dr. Szymanowski performed another pelviscopy on Shook. She was taken to surgery the same day for removal of her right fallopian tube and ovary because Dr. Szymanowski diagnosed them as the source of her pain. In his surgical report, Dr. Szymanowski made no reference to observing or removing the Hulka clip that should have still been attached to the right fallopian tube. During a deposition regarding this case, Dr. Szymanowski testified that he did not know whether he undertook any steps to search for the Hulka clip.

Shook continued to experience right lower quadrant abdominal pain and was seen by Dr. Szymanowski on September 24,

---

2. These procedures were performed to provide an internal view of Shook's pelvic area so Dr. Szymanowski could check for abnormalities, and to attempt to control the heavy bleeding by scraping the lining of the uterine cavity.

3. Removal of the ovaries leaves a woman unable to produce estrogen, resulting in surgical menopause, which may involve hot flashes, dry vagina, mood swings and other undesirable symptoms.

1996. The pain continued over the next year and on September 15, 1997, Shook was admitted to the Hospital. On September 19, 1997, Dr. Robert Pennington performed an exploratory surgery on Shook's abdomen for the purpose of determining the cause of her pain. During the surgery, Dr. Pennington examined Shook's bowel and removed her appendix, but found no abnormalities. No hernias were found. Dr. Pennington found and removed a small, benign nodule.

Dr. Szymanowski participated along with Dr. Pennington in the exploratory surgery and removed Shook's left fallopian tube and ovary. During the procedure, Dr. Szymanowski also discovered the right Hulka clip, which he later testified he was surprised to find. The Hulka clip was attached to the lower abdominal pelvic wall by a small adhesion. Shook has experienced no right lower quadrant abdominal pain since the September 19, 1997 surgery.

On February 19, 1998, Shook presented a complaint to a medical review panel (Panel). On March 21, 2001, the Panel rendered its opinion unanimously in favor of Dr. Szymanowski and GYN.

On October 29, 2001, the Shooks filed a complaint for damages against Dr. Szymanowski and GYN in Wayne County Superior Court. Thereafter, on December 4, 2001, and December 21, 2001, respectively, Dr. Szymanowski and GYN filed their motions for summary judgment. A hearing was held on May 16, 2002. On May 17, 2002, the trial court granted Szymanowski and GYN's respective motions.

The Shooks now appeal. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

In reviewing a decision of a motion for summary judgment, we apply the same standard as the trial court. *Miller v. NBD Bank, N.A.*, 701 N.E.2d 282, 285 (Ind.Ct.App.1998). The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* Once this burden has been met, the nonmoving party must respond by setting forth specific facts demonstrating a genuine need for trial, and cannot rest upon the allegations or denials in the pleadings. *Id.* We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the nonmoving party so as not to deny that party its day in court. *Id.* Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

In addressing the sufficiency of a medical malpractice action based upon negligence, the plaintiff must establish: 1) a duty on the part of the defendant in relation to the plaintiff; 2) failure on the part of the defendant to conform to the requisite standard of care required by the relationship; and 3) an injury to the plaintiff resulting from that failure. *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). Because of the complex nature of medical diagnosis and treatment, expert testimony is generally required to establish the applicable standard of care. *Simms v. Schweikher*, 651 N.E.2d 348, 350 (Ind.Ct. App.1995), *trans. denied.*

However, in some situations, a physician's allegedly negligent act or omission is so obvious that expert testimony is unnecessary. *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind.1993). Cases not requiring expert testimony are those fitting the "common knowledge" or *res ipsa lo-*

quitur exception. *Malooley v. McIntyre,* 597 N.E.2d 314, 318–319 (Ind.Ct.App. 1992). Application of this exception is limited to situations in which the physician's conduct is so obviously substandard that one need not possess medical expertise in order to recognize the breach of the applicable standard of care. *Id.* at 319. For instance, expert testimony is not required in cases involving a physician's failure to remove surgical implements or foreign objects from the patient's body. The rationale underlying these cases is that the facts themselves are sufficient to raise an inference of negligence without expert testimony. *Simms,* 651 N.E.2d at 350.

## II.  *Res Ipsa Loquitur*

▆ In support of their motion for summary judgment, Dr. Szymanowski and GYN submitted the opinion of the Panel. The Panel unanimously determined that "[t]he evidence does not support the conclusion that [Dr. Szymanowski and GYN] failed to comply with the appropriate standard of care as charged in the complaint, and the conduct complained of in the complaint was not a factor in [Shook's] resultant damages." (Appellant's App. pp. 32–40). A unanimous opinion of the medical review panel that the physician did not breach the applicable standard of care is ordinarily sufficient to negate the existence of a genuine issue of material fact entitling the physician to summary judgment. *McGee v. Bonaventura,* 605 N.E.2d 792, 794 (Ind.Ct.App.1993). Consequently, the burden shifted to the Shooks, who were obligated to either rebut the Panel's opinion with expert medical testimony or present evidence within the "common knowledge" exception. *See Malooley,* 597 N.E.2d at 318–19.

The Shooks presented no expert medical testimony to rebut the determination of the Panel. Instead, the Shooks argue that the doctrine of *res ipsa loquitur* applies to their case. Specifically, they assert that negligence in a medical malpractice action may be inferred by the failure of a surgeon to remove a foreign object that serves no purpose. In support of their contention, the Shooks rely on *Wright v. Carter,* 622 N.E.2d 170, which involved a patient who discovered a piece of wire in her breast after a biopsy. In *Wright,* the patient's radiologist inserted the wire prior to surgery to assist the surgeon in locating the nonpalpable mass he was to remove from the breast. The *Wright* court found that the "continued presence of a foreign object introduced while performing a specific procedure, but serving no medical purpose once that procedure has been completed, does give rise to an inference of negligence." *Wright,* 622 N.E.2d at 172.

We find that the case at hand is distinguishable. Unlike the wire in *Wright,* the Hulka clip at issue was placed in Shook's body with the intention of it remaining indefinitely to prevent Shook from becoming pregnant. Although the Hulka clip no longer served a medical purpose after Shook's vaginal hysterectomy, we find the medical implications of leaving the Hulka clip in Shook's body and the risks of searching for it during a surgical procedure are outside the scope of a layperson's knowledge. As a result, the doctrine of *res ipsa loquitur* does not apply. Instead, the determinations of the Panel shifted the burden to the Shooks, who were then obligated to submit expert testimony to establish the applicable standard of care and how that standard was breached. *See Marquis v. Battersby,* 443 N.E.2d 1202, 1203 (Ind.Ct.App.1982); *Simms,* 651 N.E.2d at 350; *Simmons v. Egwu,* 662 N.E.2d 657, 658 (Ind.Ct.App.1996). The Shooks failed in this regard.

### III. *Informed Consent*

■ Next, the Shooks argue that negligence may be inferred in the absence of expert testimony by a surgeon's failure to perform the surgical procedure to which the patient has consented. Specifically, on September 12, 1996, Dr. Szymanowski removed Shook's right fallopian tube and ovary, with Shook's consent, because Dr. Szymanowski's diagnosis indicated they were the likely source of her pain. However, the Shook's contend that Dr. Szymanowski failed to remove the entire right fallopian tube, including the Hulka clip, thereby failing to perform the surgery to which Shook consented. The Shooks assert that, as a result, Shook endured more pain until the tube fragment and the clip were finally removed in September of 1997.

In support of their contention, the Shooks present the case of *Bowman v. Beghin*, 713 N.E.2d 913 (Ind.Ct.App.1999). In *Bowman*, the patient asked his surgeon if he was going to perform the same spinal surgery recommended by another surgeon, which included a procedure known as microdiscectomy. The surgeon responded that he would perform that procedure. Based upon that response, the patient consented to the surgery. The surgeon subsequently performed part of the recommended surgery, but excluded the microdiscectomy.

The *Bowman* court held that no expert testimony was required to establish a failure to conform to the standard of care on the issue of informed consent. However, the court found that, in the context of informed consent, there must be a causal relationship between the physician's failure to inform and the injury to the plaintiff. *Bowman*, 713 N.E.2d at 917. Further, such causal connection arises only if it is established that, had the revelation been made, consent to treatment would not have been given. *Id.* Once again, the case at hand is distinguishable.

The Shooks have made no assertion that, if Szymanowski had informed Shook that he might not remove all of the right fallopian tube and Hulka clip, Shook would not have consented to the September 1997 surgery. Moreover, as with the previous argument, we find that the medical implications of leaving the Hulka clip in Shook's body, whether loose or attached to a fragment of fallopian tube, and the medical risks of searching for it during a surgical procedure are outside the scope of a layperson's knowledge. Accordingly, we find that, once the burden shifted to the Shooks, they were obligated and failed to submit expert testimony to establish the applicable standard of care and how that standard of care was breached. *See Marquis v. Battersby*, 443 N.E.2d 1202, 1203 (Ind.Ct.App.1982); *Simms*, 651 N.E.2d at 350; *Simmons v. Egwu*, 662 N.E.2d 657, 658 (Ind.Ct.App.1996).

### CONCLUSION

For the foregoing reasons, we find that the trial court properly granted motions for summary judgment in favor of Dr. Szymanowski and GYN.

Affirmed.

BAKER, J., concurs.

MATHIAS, J., dissents with separate opinion.

MATHIAS, Judge, dissenting.

I respectfully dissent.

As the majority notes, "in some situations, a physician's allegedly negligent act

or omission is so obvious that expert testimony is unnecessary." Op. p. 1190–1191 (citing *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind.1993)).

> [T]here are some situations in which a physician defendant's allegedly negligent act or omission is so obvious as to allow plaintiffs to rely on the doctrine of res ipsa loquitur. Juries do not need an expert to help them conclude, say, that it is malpractice to operate by mistake on the wrong limb. Sometimes, the undisputed facts themselves create an inference of negligence such that the judge cannot say that the defendant must win as a matter of law, the contrary opinion of the medical review panel notwithstanding. . . . .

*Wright*, 622 N.E.2d at 171. Our supreme court has previously held that expert opinion evidence is generally not required in cases involving the failure of the operating physician to remove a surgical implement or other foreign object from the patient's body. *Id.* at 172.

In *Burke v. Capello*, 520 N.E.2d 439 (Ind.1988),[4] the plaintiff underwent hip replacement surgery and experienced "exceptional pain" following the surgery. *Id.* at 440. Upon examination, "it was discovered that a fragment of cement used when affixing the prosthesis had been left in the wound and was lodged near the femoral nerve." *Id.* The plaintiff then underwent surgery to remove the cement and, following its removal, the severe pain subsided. *Id.* Our supreme court determined that the plaintiff was not required to present expert medical testimony concerning the standard of care because the case "involves

the leaving of a foreign object in the body which should have been removed by an act understandable by the jury without extensive technical input." *Id.* at 441.

> A rational trier of fact could have inferred from the admissible evidence that the cement would have been in at least a hardening state and thus perceptible by sight or touch to a careful observer engaged in the process of cleansing the wound of debris, instruments, and other paraphernalia.

*Id.*

In this case, when Dr. Szymanowski performed the vaginal hysterectomy on Shook on July 8, 1996, Dr. Szymanowski removed the Hulka clip from the left fallopian tube, but was unable to find and remove the Hulka clip he had previously affixed to the right fallopian tube. In his deposition, Dr. Szymanowski testified:

> Q: Why did you remove the left Hulka clip and attempt to remove the right one? What purpose was there in doing that?
>
> A: I suppose, simply, *it's a foreign body, and if its accessible, you would try to get it out, I assume.*

Appellant's App. p. 88 (emphasis added).

Thus, even Dr. Szymanowski recognized that the Hulka clip on the right fallopian tube had, at that point, become a foreign body because it was no longer medically necessary. Furthermore, Dr. Szymanowski could not recall whether he told Shook that the right Hulka clip was not removed. Appellant's App. p. 89.

Two months later, on September 12, 1996, Dr. Szymanowski removed Shook's

---

**4.** *Burke* was overruled on other grounds by *Vergara by Vergara v. Doan*, 593 N.E.2d 185, 186 (Ind.1992). In *Vergara* our supreme court abandoned the modified locality rule, which measured the defendant's conduct against that of other doctors in the same community.

right fallopian tube and ovary due to her complaints of pain. However, once again, the remaining Hulka clip, which by now was no longer attached to the right fallopian tube, was not removed. In the documents submitted to the trial court, there was no evidence that Dr. Szymanowski even attempted to locate the Hulka clip and to remove it at the time of that surgical procedure.

I would hold that once Dr. Szymanowski failed to locate and remove the Hulka clip from Shook's body during the July 8, 1996 surgery after it had become medically unnecessary, the clip became a foreign object. His subsequent failure to remove the clip during the September 12, 1996 surgery and possible failure to notify Shook that it remained in her body after these two separate surgeries "is sufficient to raise an inference of negligence, thereby obviating the need for an affidavit to that effect from an expert in order for" Shook to survive the defendants' motions for summary judgment. *See id.* Therefore, I would reverse the trial court and remand this case with instructions to deny Dr. Szymanowski's and GYN's motions for summary judgment.