**J. SYFU, M.D., Appellant–Defendant,**

v.

**Tammy L. QUINN, Appellee–Plaintiff.**

**No. 45A05–0408–CV–457.**

Court of Appeals of Indiana.

May 5, 2005.

Robert J. Dignam, Spangler, Jennings & Dougherty, Merrillville, IN, Attorney for Appellant.

R. Brian Woodward, Casale, Woodward & Buls, LLP, Merrillville, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, J. Syfu, M.D. (Dr. Syfu), appeals the trial court's denial of his Motion for Summary Judgment.

We reverse and remand.

### ISSUE

Dr. Syfu raises one issue on appeal, which we restate as follows: whether the trial court erred in denying his Motion for Summary Judgment.

### FACTS AND PROCEDURAL HISTORY

On October 31, 2000, Richard O. Oni, M.D. (Dr. Oni) performed a laminectomy and spinal fusion on Tammy Quinn (Quinn) at Methodist Hospital in Merrillville, Indiana. During the surgery, Dr. Syfu served as the anesthesiologist. In preparation for surgery, Dr. Syfu placed Quinn in the prone position, lying on her stomach. Dr. Syfu then put an Opti–Gard eye protector (the Opti–Gard) on Quinn to protect her eyes from injury while under general anesthesia. The Opti–Gard is essentially a pair of goggles that are affixed to the face with an adhesive. After Dr. Syfu placed the Opti–Gard on Quinn, he placed her head on a foam pad while tilting her head to one side to allow her to breathe through an endotracheal tube. During the eight-hour surgery, Dr. Syfu lifted Quinn's face off of the foam pillow every half hour to forty-five minutes to relieve any pressure that the Opti–Gard may have put on her face. Failure to properly elevate a patient's head during a prone surgery could cause pressure damage to the face.

After the surgery, Dr. Syfu removed the Opti–Gard from Quinn's eyes. Upon removal, a skin wound was detected around Quinn's left eye socket where the Opti–Gard had been affixed. Dr. Oni described the wound as "mild scarring in the periorbital region around her eye." (Appellant's Appendix p. 119).

On May 31, 2001, Quinn filed a proposed complaint with the Indiana Department of Insurance alleging medical malpractice against Dr. Oni, Dr. Syfu, and Methodist Hospitals, Inc. (Methodist). Before the medical review panel (the Panel) rendered its opinion, Quinn filed a complaint for damages in the Lake Circuit Court against Dr. Oni, Dr. Syfu, and Methodist on June 30, 2003. Thereafter, on July 23, 2003, the Panel rendered its opinion unanimously in favor of Dr. Oni, Dr. Syfu, and Methodist.

On August 22, August 26, and November 10, 2003, Dr. Syfu, Dr. Oni, and Methodist, respectively, filed their Motions for Summary Judgment. The trial court scheduled a hearing for all three motions to be held on May 5, 2004. However, prior to the hearing, Quinn agreed to the entry of summary judgment in favor of Dr. Oni and Methodist. Subsequently, on May 5, 2004, after entering summary judgment in favor of Dr. Oni and Methodist, the trial court held a hearing on Dr. Syfu's Motion for Summary Judgment. After taking the matter under advisement, the trial court denied Dr. Syfu's Motion for Summary Judgment on June 11, 2004.

Dr. Syfu now appeals by interlocutory order. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### I. Standard of Review

In reviewing a decision of a motion for summary judgment, we apply the same standard as the trial court. *Boston*

*v. GYN, Ltd.*, 785 N.E.2d 1187, 1190 (Ind. Ct.App.2003), *trans. denied.* The moving party bears the burden of showing *prima facie* that there are no genuine issues of material fact and that it· is entitled to judgment as a matter of· law. *Id.* Once this burden has been met, the nonmoving party must respond by setting forth specific facts demonstrating a genuine need for trial, and cannot rest upon the allegations or denials in the pleadings. *Id.* We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the nonmoving party so as not to deny that party its day in court. *Id.* Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C).

■■■ In addressing the sufficiency of a medical malpractice action based upon negligence, the plaintiff must establish: 1) a duty on the part of the defendant in relation to the plaintiff; 2) failure on the part of the defendant to conform to the requisite standard of care·required by the relationship; and 3) an injury to the plaintiff resulting from that failure. *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). Physicians are not held to a duty of perfect care. *Slease v. Hughbanks*, 684 N.E.2d 496, 498 (Ind.Ct.App.1997). Instead, the doctor must exercise the degree of skill and care ordinarily possessed and exercised by a reasonably skillful and careful practitioner under the same or similar circumstances. *Id.* To establish the applicable standard of care and to show a breach of that standard, a plaintiff must generally present expert testimony. *Id.*

■■■ However, in some situations, a physician's allegedly negligent act or omission is so obvious that expert testimony is unnecessary. *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind.1993). Cases not re-quiring expert testimony are those fitting the "common knowledge" or *res ipsa loquitur* exception. *Malooley v. McIntyre*, 597 N.E.2d 314, 318–319 (Ind.Ct.App. 1992). Application of this exception is limited to situations in which the physician's conduct is so obviously substandard that one need not possess medical expertise in order to recognize the breach of the applicable standard of care. *Id.* at 319.

## II. *Res Ipsa Loquitur*

Dr. Syfu contends that the trial court erred in relying on the doctrine of *res ipsa loquitur* when it denied his Motion for Summary Judgment. Specifically, Dr. Syfu asserts that the doctrine of *res ipsa loquitur* does not apply to this case because Quinn failed to present expert testimony that Dr. Syfu's conduct fell below the applicable standard of care, and whether Dr. Syfu's care of Quinn was negligent is not within the common knowledge of lay persons.

■■■ The doctrine of *res ipsa loquitur* is a qualified exception to the general rule that the mere fact of injury will not create an inference of negligence. *Res ipsa loquitur* literally means, "the thing speaks for itself." *Narducci v. Tedrow*, 736 N.E.2d 1288, 1292 (Ind.Ct.App.2000). Consequently, the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant. *Id.* The doctrine of *res ipsa loquitur* is a rule of evidence which allows an inference of negligence to be drawn from certain surrounding facts. *Id.* Application of the doctrine does not in any way depend on the standard of care imposed by law but, rather, depends entirely upon the nature of the occurrence out of which the injury arose. *Id.*· Whether the doctrine applies in any given negligence case is a mixed question of law and.fact.

*Id.* The question of law is whether the plaintiff's evidence included all of the underlying elements of *res ipsa loquitur. Id.* Specifically, this court has held that:

> Under the doctrine of *res ipsa loquitur*, negligence may be inferred where 1) the injuring instrumentality is shown to be under the management or exclusive control of the defendant or his servants, and 2) the accident is such as in the ordinary course of things does not happen if those who have management of the injuring instrumentality use proper care.

*Vogler v. Dominguez*, 624 N.E.2d 56, 61 (Ind.Ct.App.1993), *trans. denied.* A plaintiff relying on *res ipsa loquitur* may establish the second prong, and show that the event or occurrence was probably the result of negligence, by relying upon common knowledge or expert testimony. *Id.* Expert testimony is required only when the issue of care is beyond the realm of the layperson. *Narducci*, 736 N.E.2d at 1293. In other words, the standard of care need not be established by expert opinion when a doctor's conduct is understandable to the jury without extensive technical input. *Id.*

Here, there is no dispute that the first prong of the *res ipsa loquitur* doctrine is satisfied, as the entire area above Quinn's chest was under the exclusive control of Dr. Syfu. Therefore, we must determine whether the injury would ordinarily not have occurred if Dr. Syfu had used proper care.

### A. *Expert Testimony*

 Dr. Syfu first contends that there is no genuine issue of material fact because Quinn did not present expert testimony to rebut the Panel's unanimous opinion in favor of Dr. Syfu. Where expert testimony is presented in the form of an affidavit, the affidavit must set forth that the expert is familiar with the proper standard of care under the same or similar circumstances, what that standard of care

is, and that the defendant's treatment of the plaintiff fell below that standard of care. *Lusk v. Swanson*, 753 N.E.2d 748, 753 (Ind.Ct.App.2001), *trans. denied.* A unanimous opinion of the medical review panel finding that the physician did not breach the applicable standard of care is ordinarily sufficient to negate the existence of a genuine issue of material fact entitling the physician to summary judgment. *Simmons v. Egwu*, 662 N.E.2d 657, 658 (Ind.Ct.App.1996), *trans. denied.*

Our review of the record reveals that in support of Dr. Syfu's Motion for Summary Judgment, he submitted the Panel's unanimous opinion which stated that "[t]he evidence does not support the conclusion that [Dr. Syfu] failed to meet the applicable standard of care as charged in the complaint." (Appellant's App. pp. 10–12). To rebut the Panel's opinion Quinn admitted into evidence an affidavit from Terrance A. Vaisvilas, M.D. (Dr. Vaisvilas), an Illinois anesthesiologist. Dr. Vaisvilas stated what the standard of care is for an anesthesiologist during surgeries such as the one that Quinn had. However, Dr. Vaisvilas did not state that Dr. Syfu fell below the applicable standard of care. Because Dr. Vaisvilas' affidavit failed to disclose that Dr. Syfu's conduct fell below the standard of care, we find that no genuine issue of material fact was established through his affidavit. *See Widmeyer v. Faulk*, 612 N.E.2d 1119, 1123 (Ind.Ct.App.1993).

### B. *Common Knowledge*

 Next, Dr. Syfu argues that the "common knowledge" exception to expert testimony is inapplicable in this case. Specifically, Dr. Syfu maintains that a jury does not possess the independent knowledge and expertise necessary to render an intelligent decision as to whether his conduct fell below the standard of care for anesthesiologists. On the other hand, Quinn argues that negligence may be in-

ferred because Dr. Syfu has never injured the eye of any of his previous 2,000 patients.

Our courts have held that expert testimony is not required when the fact-finder can understand that the physician's conduct fell below the applicable standard of care without technical input from an expert witness. *See Whyde v. Czarkowski,* 659 N.E.2d 625, 628 (Ind.Ct.App.1995), *trans. denied.* Such actions have typically arisen from physicians leaving a foreign object in the patient's body; juries can understand without independent explanation that the object should have been removed. *See Burke v. Capello,* 520 N.E.2d 439 (Ind.1988) (holding that expert testimony is unnecessary when orthopedic surgeon failed to remove two pieces of cement, totaling one-inch in diameter, after affixing prosthesis for hip replacement), *overruled on other grounds by, Vergara by Vergara v. Doan,* 593 N.E.2d 185 (Ind. 1992); *Ciesiolka v. Selby,* 147 Ind.App. 396, 261 N.E.2d 95 (1970) (finding that jury did not need expert testimony to conclude that doctor negligently left mesh in patient's abdomen); Other types of medical malpractice actions have also been sent to the jury without the aid of expert testimony. In *Gold v. Ishak,* 720 N.E.2d 1175 (Ind.Ct.App.1999), *trans. denied,* for example, this court concluded that expert testimony is not required because a fire occurring during surgery where an instrument that emits a spark is used near a source of oxygen is not beyond the realm of the lay person to understand. *See also Stumph v. Foster,* 524 N.E.2d 812 (Ind.Ct.App.1988) (holding that the jury did not need expert testimony to decide a chiropractor negligently broke his patient's rib during treatment for migraine headaches).

Here, the record reveals that an anesthesiologist exercising due care must elevate a patient's head several times during the course of a prolonged surgery in order to avoid pressure upon the globe of the eye from the Opti–Gard. The record further reveals that prolonged pressure to the skin can cause a permanent breakdown of the skin, resulting in necrosis and scarring. In this case, uncontested testimonial evidence shows that Dr. Syfu elevated Quinn's head to relieve pressure off of her face every half hour to forty-five minutes during the eight-hour surgery. However, Dr. Syfu's conduct and the medical reasons for alleviating pressure off of a patient's face during prolonged surgery are matters not within the realm of a laypersons knowledge and thus require expert testimony. Therefore, we decline to extend the "common knowledge" exception to the facts of this case. Accordingly, Quinn has failed to establish the second prong of the *res ipsa loquitur* doctrine, or to establish a genuine issue of material fact regarding its application here.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in denying Dr. Syfu's Motion for Summary Judgment.

Reversed and remanded with instructions to enter summary judgment for Dr. Syfu.

SULLIVAN, J., and NAJAM, J., concur.