**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOSHUA E. LEICHT**
Kokomo, Indiana

ATTORNEY FOR APPELLEE
GREENO INSURANCE, INC.:

**THOMAS J. TRAURING**
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ARNIE COOK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 34A02-1203-PL-199 |
| | ) | |
| GREENO INSURANCE, INC., and | ) | |
| CARL GREENO, JR., | ) | |
| | ) | |
| Appellees. | ) | |

**APPEAL FROM THE HOWARD SUPERIOR COURT**
The Honorable George A. Hopkins, Judge
Cause No. 34D04-0907-PL-800

**August 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

Arnie Cook appeals the trial court's grant of summary judgment in favor of Greeno Insurance, Inc. ("GII") in Cook's action against GII and Carl Greeno, Jr. ("Greeno").[1]

We affirm.

## ISSUE

Whether the trial court erred in granting GII's motion for summary judgment.

## FACTS

Cook's action against GII is inextricably linked with his relationship to his former employer, Consolidated Roofing, Inc. ("Consolidated"), which was owned by Janis and Kenneth Devlin. This relationship was the subject of a former appeal, which was resolved in an unpublished memorandum decision. *See Cook v. Consolidated Roofing, Inc.*, No. 34A02-1104-CC-339 (Ind. Ct. App. Jan. 11, 2012). In our memorandum decision, we stated the following:

> Cook had been in the roofing business for many years in the Howard County area and was the president and majority shareholder (Cook owned 80% of the corporation) in a corporation named A C Roofing, Inc. . . .
>
> In 2003, Cook approached Janis and Kenneth Devlin about selling his business to the couple, who were already involved in a roofing supply company. . . . The Devlins eventually decided to purchase the company, and they entered into lengthy negotiations with Cook. The negotiations

---

[1] The trial court's summary judgment order referred solely to GII, not to Greeno. Greeno was not a party to the motion for summary judgment filed by GII and does not participate in this appeal.

2

resulted in the execution of two contracts on October 22, 2004, a real and personal asset purchase agreement (purchase agreement) and an employment contract. . . .

Pursuant to the employment contract, Consolidated agreed to employ Cook as a manager and consultant on roofing issues for the term of five years, commencing on November 1, 2004 and terminating on October 31, 2009. This short, two-page agreement further provided in part:

Time

The Employee shall devote his entire time and attention to the business of the Employer for the term of this contract. The Employee shall not directly or indirectly render any services of a business or commercial nature to any other person or organization without the prior written consent of the Employer.

\* \* \* \*

Effect of Termination on Compensation

If this contract is terminated prior to completion of the term of employment specified in this contract, the Employee shall be entitled to compensation earned prior to the date of termination as provided for in this contract computed pro rata up to and including the date. The Employee shall be entitled to no further compensation as of the date of termination.

Retirement

The parties agree that Employer shall provide a retirement plan to Employee as shall be agreed upon by the parties and at a minimum shall include health insurance and reasonable compensation.

Cook worked for Consolidated for over a year as the primary spokesman and marketing person for A C Roofing, also doing business as Arnie Cook Exteriors. Although the Devlins were pleased with his performance, they eventually began hearing rumors from others. For example, people told them that Cook was talking about "taking his company back." This was

followed by suspicious behavior, such as indications that Cook had cut three hidden holes in the drywall in an attempt to spy into Janis Devlin's office.

On March 2, 2006, Consolidated suspended Cook with pay. Consolidated's attorney notified Cook that during the indefinite suspension Cook was not to conduct any business on behalf of the company and was not authorized to purchase any material or attend any trade group meetings. . . .

Beginning in May 2006 and continuing through the spring of 2007, Cook's legal counsel [made certain demands of Consolidated]. Cook also sought to establish the provisions of his retirement plan.

After about a year of paid suspension, Cook began investigating establishing a roofing business with his son in at least one other area of Indiana. As part of his activities while suspended, on March 27, 2007, he purchased a commercial general liability policy in the name of Cook & Cook, Inc. During his suspension, he also contacted two of Consolidated's roofing suppliers and obtained quotations for roofing supplies from at least one of them. Further, after having business cards printed, he traveled to the New Albany area and talked with contractors and building owners to try to "drum up some business." According to Cook, nothing came of these business attempts and he did no roofing jobs.

Though Janis Devlin had heard that Cook was doing roofing jobs while on paid suspension, she did not act upon these rumors until evidence of the commercial general liability policy surfaced.[2] At that point, Consolidated's legal counsel sent a letter to Cook, dated July 31, 2007, terminating his employment for breach of the employment agreement.

On August 1, 2007, Cook filed a complaint against Consolidated . . . [seeking] an order for retirement benefits, health insurance, and profit sharing . . . .

Slip Op. at 1-3 (citations omitted).

---

[2] The designated evidence is unclear, but the evidence was a certificate of insurance purchased from Greeno, a GII employee, and apparently sent by Greeno to Cook at A C Roofing or Arnie Cook Exteriors.

In the aforementioned appeal, Cook contended that he was not terminated for cause, as required by his employment contract. We held that his activities in violation of his contract "provided Consolidation with ample cause for his termination." *Id*. at 4.

In the appeal, Cook also contended that the trial court erred in determining that he was not entitled to retirement benefits following his termination for cause. We disagreed, holding that there was "simply no language in the employment agreement to support Cook's self-serving interpretation of the contract." *Id*. at 5. We noted, "Having not completed his five-year commitment to Consolidated, Cook was not entitled to retirement benefits." *Id*.

Here, Cook filed a complaint against GII and Greeno, alleging that GII and Greeno intentionally interfered with his business relationship with Consolidated by "providing false and/or confidential information [in the form of a certificate of insurance] to [Consolidated]." (App. 8). Cook also maintained that Greeno breached his fiduciary duty with Cook "by providing information [in the form of a certificate of insurance] to [Consolidated] on or about July 23, 2007, without [Cook's] consent." (App. 8-9). Cook alleged that he suffered damages "as a result of the intentional tortious interference with the business relationship and breach of fiduciary duty." (App. 9). Cook reasoned that GII was liable for Greeno's acts under the doctrine of respondeat superior.[3]

---

[3] Under the doctrine of respondeat superior, an employer is vicariously liable for the wrongful or tortious acts of its employees that were committed within the course and scope of their employment. *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008).

GII filed a motion for summary judgment, arguing that as a matter of law Cook was barred by the doctrine of collateral estoppel from bringing an action for interference with the business relationship and for damages due to termination of Cook's contract with Consolidated. GII also alleged that Greeno provided any false information about Cook's insurance coverage to Consolidated while acting alone and that there was no genuine issue of material fact showing that Greeno acted within the course or scope of his employment in doing so.

In granting summary judgment, the trial court specifically adopted proposed conclusions of law filed by GII. These conclusions of law are identical to the claims made in GII's motion for summary judgment.

DECISION

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *City of Terre Haute v. Pairsh*, 883 N.E.2d 1203, 1206 (Ind. Ct. App. 2008), *trans. denied*. When reviewing entry of summary judgment, we stand in the shoes of the trial court. *Koppin v. State*, 761 N.E.2d 455, 460 (Ind. Ct. App. 2002), *trans. denied.* The moving party bears the burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1190 (Ind. Ct. App. 2003), *trans. denied*. We review only the designated evidentiary material in the record, construing that evidence liberally in favor of the nonmoving party so as not to deny that

6

party its day in court. *Myers v. Irving Materials*, 780 N.E.2d 1226, 1228 (Ind. Ct. App. 2003).

In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Commr's of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific conclusions of law does not alter the nature of a summary judgment, which is a judgment entered when there are no genuine issues of material fact to be resolved. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific conclusions. *Id*. They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id*.

Cook alleges that the trial court erred in granting summary judgment because the undisputed facts establish that GII is liable under the doctrine of respondeat superior for actions by Greeno that constitute either (1) tortious interference with a contractual relationship; (2) tortious interference with a business relationship; and/or (2) breach of a fiduciary relationship.

In order to establish tortious interference with a contract, Cook is required to show: (1) the existence of a valid and enforceable contract; (2) GII's knowledge of the existence of a contract; (3) GII's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from GII's wrongful inducement of

7

the breach.  *See Ind. Regional Recycling, Inc. v. Belmont Indus., Inc.*, 957 N.E.2d 1279, 1287 (Ind. Ct. App. 2011), *trans. denied.*

GII argues that Cook's tortious interference with a contract claim is barred under the doctrine of collateral estoppel.  "Issue preclusion, or collateral estoppel, bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit."  *Edwards v. State*, 862 N.E.2d 1254, 1259 (Ind. Ct. App. 2007), *trans. denied*.  Where collateral estoppel is applicable, "the former adjudication will be conclusive in the subsequent action even if the two actions are on different claims."  *Id.*  In determining whether collateral estoppels applies, "the prime consideration is whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Sullivan v. American Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 138 (Ind. Ct. App. 1995), *trans. denied*.

Here, Cook is estopped from asserting that GII caused a breach of his contract with Consolidated where we have previously determined that no breach existed. Accordingly, the trial court did not err in deciding, as a matter of law, that GII cannot prevail on its tortious interference with a contract claim.

In order to establish tortious interference with a business relationship, Cook is required to show: (1) the existence of a valid relationship; (2) GII's knowledge of the

8

existence of the relationship; (3) GII's intentional interference with the relationship; (4) the absence of justification; and (5) damages resulting from GII's wrongful interference with the relationship. *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind. Ct. App. 2000). As noted above, in the previous appeal concerning the circumstances of this case, we affirmed the trial court's finding that Cook was terminated by Consolidated for cause and that no contracts had been breached by Consolidated.

Here, Cook alleges that the interference with a business relationship occurred when GII, through Greeno's action of informing Consolidated about the insurance provided to Cook, (presumably by sending the certificate to either A[rnie] C[ook] Roofing or Arnie Cook Exteriors), caused Consolidated to withdraw its offer of retirement benefits to Cook. In *Murat Temple Ass'n, Inc. v. Live Nation Worldwide*, *Inc.*, 953 N.E.2d 1125,1132 (Ind. Ct. App. 2011), *trans. denied*, we held that "an action for intentional interference with a business relationship arises where there is no contract underlying the relationship." Here, where Cook and Consolidated's relationship was governed by a contract, Cook's interference with a business relationship claim, as a matter of law, cannot stand.

With reference to his breach of a fiduciary relationship claim, Cook is required to show (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *York v. Fredrick*, 947 N.E.2d 969, 978 (Ind. Ct. App. 2011), *trans. denied*. A confidential relationship exists

9

when confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Id*.

As we stated above, we stand in the shoes of the trial court when we review a summary judgment motion. *See Koppin*, 761 N.E.2d at 460. In conducting our review, we consider only the designated material in the record. *Myers*, 780 N.E.2d at 1228.

We note that the mere act of sending a certificate of insurance to a client is not a breach of a fiduciary duty. To prove such a breach, Cook was required to designate evidence showing that Greeno (1) knew he should not have sent the certificate to A C Roofing or Arnie Cook Exteriors (2) knew that by sending the certificate to A C Roofing or Arnie Cook Exteriors he was actually sending the certificate to Consolidated; and/or (3) knew of the troubled relationship between Cook and Consolidated. Our review of the record shows that Cook designated no facts to establish what Greeno knew when he sent the certificate. Thus, Cook failed to designate evidence to establish a breach of duty by Greeno. Because GII's potential liability is premised upon a breach by its employee, and no designated evidence establishes a breach, the trial court did not err in granting GII's summary judgment motion.

Affirmed.

KIRSCH, J., and BARTEAU, SR. J., concur.