## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 19 2018, 9:55 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Mary N. Poole
Anderson, Indiana

ATTORNEYS FOR APPELLEES

Robert G. Zeigler
Marilyn A. Young
Erin E. Meyers
Zeigler Cohen & Koch
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mary N. Poole,<br>*Appellant-Plaintiff*,<br><br>v.<br><br>Anonymous D.P.M., Anonymous Medical Group, Anonymous M.D., Anonymous Network, and Anonymous Hospital,<br><br>*Appellees-Defendants*. | November 19, 2018<br><br>Court of Appeals Case No.<br>48A02-1706-CT-1376<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Mark K. Dudley, Judge<br><br>Trial Court Cause No.<br>48C06-1403-CT-37 |

**Brown, Judge.**

[1] Mary N. Poole appeals the trial court's entry of summary judgment in favor of Anonymous M.D., Anonymous Network, and Anonymous Hospital (collectively, "Health Care Providers") in a medical malpractice action. Poole raises several issues, which we revise and restate as whether the court erred in entering summary judgment in favor of Health Care Providers. We affirm.

## Facts and Procedural History

[2] After filing a proposed complaint with the Indiana Department of Insurance ("IDOI"),[1] Poole filed a complaint on March 10, 2014, against Health Care Providers and Anonymous D.P.M.,[2] in which she alleged:

> 4. Defendant, Anonymous, M.D. is a partially covered Qualified Health Care Provider under the [Indiana Malpractice Act ("the Act")] per the IDOI.
>
> 5. Defendant, Anonymous Hospital is a Qualified Health Care Provider under the Act. It also employs other health care providers who were integrally involved in [Poole's] care.
>
> 6. On or about February 29, 2012, on the referral of Wa'el Bakdash, M.D. for a diabetic foot exam, [Poole] first visited Anonymous, D.P.M. at which time he noted her current medications included Plavix.

---

[1] The record does not contain a copy of the proposed complaint filed with IDOI.

[2] Poole later amended her complaint to include Anonymous Medical Group as a defendant. Anonymous D.P.M. and Anonymous Medical Group are represented separately from Health Care Providers, who filed a motion for summary judgment. Anonymous D.P.M. and Anonymous Medical Group did not join the motion for summary judgment.

7. On or about December 5, 2012, Anonymous, D.P.M. recommended surgery to [Poole], but did not instruct her to stop taking Plavix.

8. [On] December 12, 2012, Anonymous, D.P.M. performed arthroplasty flexor tendon transfer of Plaintiff's 2nd, 3rd, and 4th right toes and arthroplasty of 5th right toe with .035 K-wire. Immediately prior to this surgery, Anonymous, D.P.M. was informed that [Poole] had not stopped taking Plavix.

9. Anonymous, M.D. was the anesthesiologist for the arthroplasty surgery performed on December 12, 2012 by Anonymous, D.P.M. on [Poole]. He was aware immediately before surgery that [Poole] was taking Plavix.

10. On or about December 12, 2012, Marcaine with epinephrine was injected as local anesthesia by Anonymous, D.P.M. prior to and after performing surgery, which local anesthesia was contraindicated in this patient.

11. By December 25, 2012, [Poole] had necrotic tips of her digits with Anonymous, D.P.M. advising it was either due to congestion with severe ecchymosis or an ischemic event.

* * * * *

13. The conduct of Anonymous, M.D. fell below the applicable standard of care including, but not limited to, going forward with surgery after learning that [Poole] had not stopped taking Plavix.

14. The conduct of the nurse employees of Anonymous Hospital fell below the applicable standards of care including, but not limited to, providing Marcaine with epinephrine to Anonymous, D.P.M. for administration as a local during [Poole's] toe surgery and failing to be an advocate for the patient.

15. As a direct and proximate result of Defendants' negligence, certain portions of [Poole's] toes had to be amputated, resulting in permanent impairment and disfigurement, significant

subsequent medical treatment and bills, pain and suffering, emotional distress, and other injuries and damages.

Appellant's Appendix Volume I at 64-66.

[3] On August 23, 2016, Health Care Providers filed a motion for summary judgment which asserted that there was no genuine issue of material fact as to each of three elements of Poole's complaint, namely "(1) expert testimony establishing the required standard of care, (2) expert testimony that [Health Care Providers] failed to observe that standard, and (3) expert testimony establishing the cause in fact of the alleged injuries," and attached a copy of the medical review panel opinion. *Id.* at 72. The attached opinion displays a file-stamp of April 25, 2016, and states that the medical review panel was of the unanimous opinion that the "evidence does not support the conclusion that the defendants failed to meet the applicable standard of care, and that their conduct was not a factor of the resultant damages." *Id.* at 74.

[4] On September 20, 2016, Poole's counsel filed a motion for leave to withdraw appearance and a motion for extension of time to respond to Health Care Providers' motion for summary judgment, and the court granted "an extension of time to and including December 21, 2016." *Id.* at 99. On December 21, 2016, Poole filed a "petition for time extension (30 days)" and indicated that she had a lawyer who had looked at the case for thirty days and "then said she couldn't take it" and that she has "a lawyer who say[s] he will help me." *Id.* at 105. The chronological case summary ("CCS") indicates that the court granted

Poole's request, "however, only until 01/06/2017. Hearing remains scheduled for 01/13/2017." *Id.* at 9.

[5] On January 6, 2017, Poole filed, *pro se*, both a memorandum in opposition to the summary judgment motion of Health Care Providers and her own personal affidavit. Poole's memorandum states, in part:

> There is no indication, such as risks or medication instructions on [Poole's] surgery consent form that specifies the risks associated with her pre-existing medical history and current medication usage. **Exhibit 7**. Further, in neither [Anonymous D.P.M.'s] answer to pre-trial interrogatory nor the attending Anesthesiologist, [Anonymous M.D.'s] pre-trial depositions on medication usage instructions that indicated any particular risks, other than [Anonymous D.P.M.] stating that [Poole] may have a little more bleeding because she had not stop[ped] taking Plavix. **Exhibits 8, 9**.[3]

*Id.* at 118-119. Her personal affidavit details the alleged conduct of Anonymous D.P.M. and asserts that Anonymous D.P.M. "subjected [her] to a risky, non-emergency surgery" and that she was deprived of the opportunity to make an informed decision as to whether or not to undergo the surgery. *Id.* at 108.

[6] On January 9, 2017, Poole filed a petition for a continuance, and the CCS indicates that the court continued the January 13, 2017 hearing on the motion

---

[3] We note that the exhibits cited in Poole's memorandum are not attached to the copy of her January 6, 2017 memorandum included in the appellant's appendix. On appeal, Poole acknowledges that "no exhibits were submitted with her original January 6, 2017 documents." Appellant's Reply Brief at 5. *See also* Appellant's Brief at 9 ("[Poole] inadvertently omitted a portion of the documents.").

for summary judgment initially to March 3, 2017, and eventually to March 24, 2017. On February 10, 2017, Poole filed a motion to amend her memorandum in opposition to summary judgment and asked the court to incorporate certain exhibits or, as she alleged, a "compilation of discovery, authoritative and . . . reference documents . . . relevant to the case."[4] *Id.* at 127. On February 27, 2017, the court denied the motion to amend.

[7] After hearing argument on the motion, the trial court issued an order on April 10, 2017, which granted summary judgment in favor of Health Care Providers and found that "[n]either [Poole's] designated evidence nor . . . her stricken designation contain[ed] any expert opinions bearing on the care provided," that there were no material issues of fact, and that "there being no just cause for delay such judgment shall be a final judgment." *Id.* at 23, 25. On May 9, 2017, Poole filed a motion correct error which the trial court denied on May 23, 2017.

## *Discussion*

[8] The issue is whether the trial court erred in entering summary judgment in favor of Health Care Providers. Before we address Poole's arguments, we note that *pro se* litigants, like Poole, are held to the same standards as trained attorneys and are afforded no inherent leniency simply by virtue of being self-

---

[4] While Poole's motion to amend contained within the record does not include copies of the exhibits it discussed, the "evidentiary exhibit list" attached to the motion states, in part, "Medical History Report (2012)," "Medical History Report (2013)," "Operative Report and Marcaine/Epinephrine Information," "Additional Allegation List Submittal to Medical Review Panel," "Excerpt of Defendant ([Anonymous M.D.'s]) Deposition," and "Defendant ([Anonymous D.P.M.'s]) Interrogatory." Appellant's Appendix Volume I at 129. The appellant's appendix on appeal does not contain the deposition of Anonymous M.D.

represented. *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014) (citing *Matter of G.P.*, 4 N.E.3d 1158 (Ind. 2014)). *Pro se* litigants are required to follow procedural rules, *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*, and "must be prepared to accept the consequences of their failure to do so." *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016), *reh'g denied*. This Court will further "not become an advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Id.* at 984 (internal quotation marks omitted).

[9]     When reviewing the grant or denial of summary judgment, we apply the same standard as the trial court. *Estate of McGoffney v. Anonymous Skilled Nursing Facility*, 93 N.E.3d 1104, 1110 (Ind. Ct. App. 2018) (citing *Anonymous Physician v. Wininger*, 998 N.E.2d 749, 751 (Ind. Ct. App. 2013)), *trans. denied*. Summary judgment is proper only when the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* All facts and reasonable inferences therefrom are construed in a light most favorable to the nonmovant and any doubts as to the existence of a material issue are resolved in favor of the nonmovant. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002).

[10] In medical malpractice cases, a unanimous opinion of the medical review panel that the physician did not breach the applicable standard of care is ordinarily sufficient to establish *prima facie* evidence negating the existence of a genuine issue of material fact entitling the physician to summary judgment. *Stafford v. Szymanowski*, 31 N.E.3d 959, 961 (Ind. 2015) (citing *Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1191 (Ind. Ct. App. 2003), *trans. denied*. *See also Bhatia v. Kollipara*, 916 N.E.2d 242, 245 (Ind. Ct. App. 2009) ("In medical malpractice cases, it is well-established that when the medical review panel opines that the plaintiff has failed to make a *prima facie* case, she must then come forward with expert medical testimony to rebut the panel's opinion in order to survive summary judgment.") (quoting *Brown v. Banta*, 682 N.E.2d 582, 584 (Ind. Ct. App. 1997), *trans. denied*). Consequently, in such situations, the burden shifts to the plaintiff, who may rebut with expert testimony. *Stafford*, 31 N.E.3d at 961. "Failure to provide expert testimony will usually subject the plaintiff's claim to summary disposition." *Bhatia*, 916 N.E.2d at 245 (citing *Widmeyer v. Faulk*, 612 N.E.2d 1119, 1122 (Ind. Ct. App. 1993)).

[11] Poole argues that a "principle issue . . . in this appeal is [the] lack of Informed Consent," cites Ind. Code §§ 34-18-12-2(3), -3, and asserts that "explanations for items 1, 3, 4, and 5 [of Ind. Code. § 34-18-12-3] are missing from her consent form and that had she been aware of the risks, she would not have

consented to the surgery."[5]  Appellant's Brief at 14-15.  She also argues that the *res ipsa loquitur* doctrine applies to this case and that the need for expert opinions in medical malpractice cases is dispensed with "when a case fits within the 'common knowledge' or *res ipsa loquitur* exception."  *Id.* at 15 (citation omitted). Health Care Providers argue that the grant of summary judgment is proper because Poole failed to create a genuine issue of material fact.

[12]  To the extent that Poole argues that the trial court erred in not considering all the evidence she wished to designate, we observe that Trial Rule 56(C) provides that "a party opposing a motion for summary judgment has thirty days to serve a response or any other opposing affidavits."  *HomEq Servicing Corp. v. Baker*, 883 N.E.2d 95, 98 (Ind. 2008) (citing Trial Rule 56(C)).  *See also* Trial Rule 56(C) ("A party opposing the motion shall also designate to the court each material issue of fact which that party asserts precludes entry of summary

---

[5] Ind. Code § 34-18-12-2(3) provides: "If a patient's written consent is . . . explained, orally or in the written consent, to the patient or the patient's authorized representative before a treatment, procedure, examination, or test is undertaken . . . a rebuttable presumption is created that the consent is an informed consent."  Ind. Code § 34-18-12-3 provides that the explanation given in accordance with Ind. Code § 34-18-12-2(3) must include: "(1) The general nature of the patient's condition.  (2) The proposed treatment, procedure, examination, or test.  (3) The expected outcome of the treatment, procedure, examination, or test.  (4) The material risks of the treatment, procedure, examination, or test.  (5) The reasonable alternatives to the treatment, procedure, examination, or test."

Insofar as Poole "further asserts that the absence of this information constitutes a statutory violation of the code, referencing 410Ind. [sic] Admin. Code IAC 15-1.6-8, § 8(a)(3)," Appellant's Brief at 15, we observe that 410 Ind. Admin. Code 15-1.6-8(c) provides, in part: "Surgical services shall have policies governing surgical care designed to assure the achievement and maintenance of standards of medical practice and patient care, as follows: . . . (3) A properly executed informed consent form for the operation shall be in the patient's chart before surgery, except in extreme emergencies."

judgment and the evidence relevant thereto.").  Trial Rule 56(E) provides in part:

> The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.

We review the trial court's decision on a request to supplement under Trial Rule 56(E) for an abuse of discretion.  *See Estate of Collins v. McKinney*, 936 N.E.2d 252, 258 (Ind. Ct. App. 2010) ("Rule 56(E) permits supplementing affidavits with 'further affidavits,' and that (as with most evidentiary matters) such a decision lies 'within the trial court's discretion.'") (quoting *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind. 2000) ("It is within the trial court's discretion to accept an affidavit filed later than the date specified in the rule.")), *trans. denied*.  An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it.  *Scripture v. Roberts*, 51 N.E.3d 248, 254 (Ind. Ct. App. 2016) (citing *Fort Wayne Lodge, LLC v. EBH Corp.*, 805 N.E.2d 876, 882 (Ind. Ct. App. 2004)).  Here, Health Care Providers filed a motion for summary judgment and designated evidence on August 23, 2016.  Accounting for the two time extensions granted by the trial court, giving Poole until January 6, 2017, to file her response, Poole was provided an additional 106 days from the time that

she was required to respond to the summary judgment motion under Trial Rule 56(C). Poole's motion to amend, to which she purports to have attached certain exhibits, was eventually filed on February 10, 2017. Under these circumstances, we cannot say that the trial court abused its discretion by denying Poole's request to supplement her designated evidence. *See Scripture*, 51 N.E.3d at 249-250 (holding that the trial court did not abuse its discretion in denying a motion for leave to supplement).

[13] We now turn to the court's ruling on the summary judgment motion. To prevail on a claim of medical malpractice, a plaintiff must demonstrate: "(1) that the physician owed a duty to the plaintiff; (2) that the physician breached that duty; and (3) that the breach proximately caused the plaintiff's injuries." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187-1188 (Ind. 2016) (quoting *Mayhue v. Sparkman*, 653 N.E.2d 1384, 1386 (Ind. 1995)). Medical malpractice actions are similar to other negligence actions. *Narducci v. Tedrow*, 736 N.E.2d 1288, 1292 (Ind. Ct. App. 2000). The doctrine of *res ipsa loquitur* is a qualified exception to the general rule that the mere fact of injury will not create an inference of negligence. *Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005). It recognizes that "the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant." *Id.* (citing *Narducci*, 736 N.E.2d at 1292). "Application of the doctrine does not in any way depend on the standard of care imposed by law but, rather, depends entirely upon the nature of the occurrence out of which the injury arose." *Id.*

Determining whether the doctrine applies in any given negligence case is a mixed question of law and fact, with the question of law being whether the plaintiff's evidence included all of the underlying elements of *res ipsa loquitur*. *Id.* at 703-704.

> Under the doctrine of *res ipsa loquitur*, negligence may be inferred where 1) the injuring instrumentality is shown to be under the management or exclusive control of the defendant or his servants, and 2) the accident is such as in the ordinary course of things does not happen if those who have management of the injuring instrumentality use proper care.

*Id.* at 704 (quoting *Vogler v. Dominguez*, 624 N.E.2d 56, 61 (Ind. Ct. App. 1993), *trans. denied*). In the medical malpractice context, application of this exception is limited to situations in which the defendant's conduct is so obviously substandard that a jury need not possess medical expertise in order to recognize the defendant's breach of the applicable standard of care. *Methodist Hosps., Inc. v. Johnson*, 856 N.E.2d 718, 721 (Ind. Ct. App. 2006) (citing *Syfu*, 826 N.E.2d at 703). Such negligent actions typically arise when physicians leave foreign objects in a patient's body because a jury can understand without independent explanation that the object should have been removed. *Id.*

Here, we note that Poole's personal affidavit filed on January 6, 2017, concerned the actions of Anonymous D.P.M. and not Health Care Providers and that the entirety of the allegations in Poole's amended proposed complaint related to Health Care Providers were that Anonymous M.D. was "the anesthesiologist for the arthroplasty surgery performed on December 12, 2012,"

that he "was aware immediately before surgery that [Poole] was taking Plavix," and that his conduct "fell below the applicable standard of care including, but not limited to, going forward with surgery after learning that [Poole] had not stopped taking Plavix." Appellant's Appendix Volume I at 65-66. The designated evidence includes the unanimous opinion of the medical review panel, which provides that the "evidence does not support the conclusion that the defendants failed to meet the applicable standard of care, and that their conduct was not a factor of the resultant damages." *Id.* at 74.

[16]     Under these circumstances, we cannot say that the doctrine of *res ipsa loquitur* applies or that the alleged conduct of Health Care Providers is so "obviously substandard that a jury would need not possess medical expertise in order to recognize a breach of the applicable standard of care." *See Methodist Hosps.*, 856 N.E.2d at 721. Moreover, in light of the medical review panel's unanimous decision and Poole's failure to rebut it with expert testimony of her own, we cannot say that the trial court erred in entering summary judgment in favor of Health Care Providers. *Cf. Miller v. Yedlowski*, 916 N.E.2d 246, 252 (Ind. Ct. App. 2009) ("Because this leaves no evidence to oppose [doctor's] motion for summary judgment, which includes the medical review panel's unanimous decision that he did not fail to comply with the appropriate standard of care as charged in the complaint and the conduct complained of was not a factor of the resultant damages, we conclude that the trial court erred by denying his motion for summary judgment."), *trans. denied*.

*Conclusion*

[17] For the foregoing reasons, we affirm the entry of summary judgment in favor of Health Care Providers and against Poole.

[18] Affirmed.

Bailey, J., and Crone, J., concur.