# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEVEN J. COHEN**
**T. GRAHAM DYCUS**
Zeigler Cohen & Koch
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**LAURA J. CONYERS**
Findling Park and Associates, P.C.
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS
ASSOCIATION:

**MICHAEL J. STAPLETON**
**ELIZABETH B. SEARLE**
Ball Eggleston PC
Lafayette, Indiana



FILED

Sep 19 2012, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

COLUMBUS REGIONAL HOSPITAL,      )
                                 )
    Appellant-Defendant,         )
                                 )
       vs.                   )    No. 03A01-1110-CT-450
                                 )
CLYDE AMBURGEY, Individually and )
as Executor of the Estate of MOREEN )
AMBURGEY,                        )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Kathleen Tighe Coriden, Judge
Cause No.03D02-0705-CT-53

**September 19, 2012**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Columbus Regional Hospital (the "Hospital") appeals the trial court's denial of its request for partial summary judgment. The Hospital raises one issue which we revise and restate as whether the court erred in failing to enter summary judgment in its favor on the basis that the expiration of the statute of limitations with respect to two physicians foreclosed the suit brought by Clyde Amburgey, in his individual capacity and as administrator of the estate of his wife Moreen (collectively, "Amburgey"), against the Hospital. We affirm.

FACTS

The relevant facts most favorable to Amburgey and as designated by the parties follow. On May 3, 2005, Moreen was admitted to the Hospital by Dr. Michael Whitworth for revision of her intrathecal pump catheter. Clyde and Moreen were told that Moreen would return home after the surgery. After the procedure, Dr. Whitworth informed Clyde that the surgery went well and that he could see Moreen in the outpatient surgery area in about twenty minutes. At some point, Moreen experienced a decreased level of consciousness and suffered a seizure. Dr. Jiangming Xu, an employee of Southeastern Indiana Anesthesia which provides anesthesia services to the Hospital, was on call for anesthesia and responded to a page. Dr. Xu then consulted with Dr. Donald Harris whose wages were paid by Neurology & Sleep Sciences. Moreen died later that morning. At no time during the day, evening, or night did anyone ever inform Clyde that any care provided to Moreen was performed by independent contractors or persons not employed by the Hospital. Clyde also did not have any knowledge of "the relationship

2

between the [Hospital] and the physicians, Dr. Xu and Dr. Harris, who [he] now know[s] provided care to Moreen after her surgery." Appellant's Appendix at 42.

PROCEDURAL HISTORY

On May 3, 2007, Amburgey filed a Proposed Complaint for Damages against Dr. Whitworth, Dr. Timothy McEwan, and the Hospital with the Indiana Department of Insurance. Amburgey alleged that the defendants were negligent and that the care and treatment rendered by the defendants was below the standard of care and was a cause of Moreen's death. Amburgey also alleged:

> That at all times relevant herein [the Hospital] had various agents, employees, and assigns, including certain radiological technicians and nurses, in their employ who[] rendered care to [Moreen], in conjunction with all other Defendants named herein; as such, [the Hospital] is responsible for the acts and/or omissions of their agents, employees, and assigns through the doctrine of respondeat superior and apparent agency . . . .

Id. at 21.

On November 17, 2010, the Medical Review Panel found: "As to [the Hospital] there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury." Id. at 100. In January 2011, Amburgey filed an Amended Complaint for Damages with the trial court against Dr. Whitworth, Dr. McEwan, and Columbus Regional Hospital. In February 2011, the court granted Dr. McEwan's motion for summary judgment.

In May 2011, Amburgey filed a Motion for Partial Summary Judgment on the Issue of Apparent Agency. Amburgey alleged that the Hospital did nothing to inform Clyde or Moreen that any medical treatment provided to Moreen was being performed by

3

an independent contractor and requested that Dr. Xu, the anesthesiologist who was on call at the Hospital that afternoon, and Dr. Harris, a neurologist, should be deemed by the court to be the apparent agents of the Hospital. Amburgey alleged that "[i]t is not relevant whether Dr. Xu and/or Dr. Harris were or were not independent contractors" and that the only "thing that is relevant to the apparent agency question is whether the [H]ospital did anything to inform Moreen or Clyde of the alleged relationship and whether Moreen and Clyde had any reason to believe that the individuals caring for Moreen after the procedure were anything other than hospital employees." Id. at 37.

In July 2011, the Hospital filed a response to Amburgey's motion for partial summary judgment. The Hospital argued that Dr. Xu and Dr. Harris were independent contractors, that Amburgey failed to name either Dr. Xu or Dr. Harris, that the statute of limitations had since run on any claims Amburgey may have had against either Dr. Xu or Dr. Harris, and that there could be no basis for liability against the Hospital without a basis of liability against either Dr. Xu or Dr. Harris. The Hospital requested the court to find that Dr. Xu and Dr. Harris were not the Hospital's ostensible agents or that material issues of fact existed.

After a hearing on the motion, the court took the matter under advisement. On August 16, 2011, the court found that there were genuine issues of material fact regarding the claim of apparent agency and denied Amburgey's motion for partial summary judgment.

4

On September 12, 2011, the Hospital filed a motion for certification of question for interlocutory appeal.[1] On September 20, 2011, the court granted the Hospital's motion for certification of question for interlocutory appeal and stayed the proceedings pending final determination on appeal. Specifically, the court's order indicated that the Hospital's motion should be granted with respect to the following question of law:

> Whether the trial court erred in finding that genuine issues of material fact existed in medical malpractice complaint against the [Hospital] based, in part, on a theory of ostensible agency liability for the alleged acts of two (2) independent contractor physicians where the alleged ostensible agents of the [Hospital] cannot be independently held liable because they have not been named as defendants and the statute of limitations has run against them.

Id. at 13.

On October 11, 2011, the Hospital filed a motion for leave to file interlocutory appeal requesting this court to accept jurisdiction over the discretionary interlocutory appeal of the trial court's order denying Amburgey's motion for partial summary judgment, "denying [the Hospital's] request that the Court find that as a matter of law neither Jiangming Xu, M.D. and Donald Harris, M.D. were the ostensible agents of [the Hospital] and finding that material issues of fact regarding the claim of apparent agency existed." Hospital's Motion for Leave to File Interlocutory Appeal. On November 7, 2011, this court accepted jurisdiction of the interlocutory appeal pursuant to Ind. Appellate Rule 14(B). On November 8, 2011, the Hospital filed a notice of appeal indicating that it was appealing the August 16, 2011 order denying Amburgey's motion for partial summary judgment.

---

[1] The record does not contain a copy of this motion.

ISSUE

The issue is whether the court erred in failing to enter summary judgment in the Hospital's favor on the basis that the expiration of the statute of limitations with respect to Dr. Xu and Dr. Harris foreclosed Amburgey's suit against the Hospital.[2] Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. We must carefully review a decision on summary judgment to ensure that a party was not improperly denied his day in court. Id. A party moving for summary judgment bears the initial burden of showing no genuine issue of material fact and the appropriateness of judgment as a matter of law. Monroe Guar. Ins. Co. v. Magwerks Corp., 829 N.E.2d 968, 975 (Ind. 2005). If the movant fails to make this prima facie showing, then summary judgment is precluded regardless of whether the non-movant designates facts and evidence in response to the movant's motion. Id.

The Hospital essentially argues that when the cause of action is extinguished against an independent contractor physician, there exists no means by which vicarious

---

[2] Although the Hospital did not file a cross-motion for summary judgment, in its response to Amburgey's motion for partial summary judgment, the Hospital argued that the statute of limitations had since run on any claims Amburgey may have had against either Dr. Xu or Dr. Harris, and that there could be no basis for liability against the Hospital without a basis of liability against either Dr. Xu or Dr. Harris. Ind. Trial Rule 56(B) provides that "[w]hen any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party."

liability can be found against a hospital. In other words, the Hospital argues that "prior to apparent or ostensible agency imposing liability upon the hospital as the principal, a basis of liability must *exist* as to the independent contractor physician." Appellant's Brief at 12. The Hospital argues that because the statute of limitations has run on the claims against Dr. Xu and Dr. Harris, "any findings of liability on the part of Dr. Xu and Dr. Harris <u>cannot</u> flow to the Hospital *by operation of law*."[3] Id. at 13. The Hospital requests that this court reverse the ruling of the trial court and remand this matter with instructions to enter an order finding that, as a matter of law, neither Dr. Xu or Dr. Harris were ostensible agents of the Hospital.

Amburgey does not appeal the trial court's denial of his motion for partial summary judgment and requests that this court affirm the trial court's finding that there are genuine issues of material fact regarding the claim of apparent agency. Amburgey argues that the Hospital's argument is contrary to Indiana law "where it is well recognized that under the doctrine of respondeat superior, the master or principal is chargeable with and liable for any negligent acts committed by its agent or servant while the servant is acting in the course and scope of his employment." Appellee's Brief at 16. Amburgey also argues that "an injured party may sue either or both at his choosing." Id.

The Indiana Trial Lawyers Association (the "Association") filed an amicus brief and argues that the Hospital is imploring this court to create new law. The Association argues that "even when an agent is not named in a suit, the agent may still be found to

---

[3] The Hospital cites Ind. Code § 34-18-7-1 which sets forth the limitations period for claims brought against a health care provider. Amburgey does not argue that the statute of limitations had not run against Dr. Xu or Dr. Harris.

7

have been negligent; and that is sufficient to make the principal vicariously liable." Amicus Brief at 7. The Association argues that "[i]f an agent has committed a negligent act, a limitations bar against the agent does not render the act non-negligent. Rather, the statute of limitations is just an affirmative defense, which limits the remedy." Id. at 9-10. The Association contends that requiring agents to always be named in lawsuits would increase litigation and be a disservice to the orderly administration of justice. The Association also contends that the Hospital fails to explain how it is harmed if the statute of limitations expires against its agent subsequent to the Hospital having been timely sued.

## ANALYSIS

Initially, we review Sword v. NKC Hosps., Inc., 714 N.E.2d 142, 147-153 (Ind. 1999), in which the Indiana Supreme Court discussed apparent or ostensible agency. The Court held that where a plaintiff alleges negligence was not committed by a hospital, but instead by a physician working at the hospital, the plaintiff must present a theory by which a court can find the hospital vicariously liable for the actions of a physician who practices there. 714 N.E.2d at 147. "Vicarious liability is 'indirect legal responsibility.'" Id. (quoting BLACK'S LAW DICTIONARY 1404 (5th ed. 1979)). "It is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." Id. Courts employ various legal doctrines to hold people vicariously liable, including respondeat superior, apparent or ostensible agency, agency by estoppel, and the

8

non-delegable duty doctrine. Id. Some doctrines are based in tort law, some are based in agency law. Id. at 147-148.

Respondeat superior is the applicable tort theory of vicarious liability. Id. at 148. Under respondeat superior, an employer, who is not liable because of his own acts, can be held liable for the wrongful acts of his employee which are committed within the scope of employment. Id. In this context, "employer" and "employee" are often stated in broader terms as "master" and "servant." Id. One important aspect in applying respondeat superior is differentiating between those who are servants and those who are independent contractors. Id. A servant is defined in the following general manner: one who is employed by a master to perform personal services and whose physical conduct is subject to the right to control by the master. Id. It is the employer's right to control that generally separates a servant from an independent contractor. Id. "An independent contractor can, therefore, be defined as 'a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.'" Id. (quoting RESTATEMENT (SECOND) OF AGENCY § 2(3)). It is important to distinguish between servants and independent contractors in the tort context because, while a master can be held liable for a servant's negligent conduct under respondeat superior, a master generally cannot be held liable for the negligence of an independent contractor. Id. The theory behind non-liability for independent contractors is that it would be unfair to hold a master liable for the conduct of another when the master has no control over that conduct. Id.

9

Apparent agency is a doctrine based in agency law. Id. It is most often associated with contracts and the ability of an agent with "apparent authority" to bind the principal to a contract with a third party. Id. "Apparent authority 'is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal.'" Id. (quoting Pepkowski v. Life of Ind. Ins. Co., 535 N.E.2d 1164, 1166 (Ind. 1989)). The manifestation must be made by the principal to a third party and reasonably cause the third party to believe that an individual is an agent of the principal and to act upon that belief. Id. The manifestations can originate from direct or indirect communication. Id. They can also originate from advertisements to the community. Id.

In certain instances, apparent or ostensible agency also can be a means by which to establish vicarious liability. Id. at 148-149. The Indiana Supreme Court has observed:

> One enunciation of this doctrine is set forth in the Restatement (Second) of Agency section 267, which provides that:
>
>> *One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent* is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

Id. at 149. Under a Section 267 analysis, if, because of the principal's manifestations, a third party reasonably believes that in dealing with the apparent agent he is dealing with the principal's servant or agent and exposes himself to the negligent conduct because of the principal's manifestations, then the principal may be held liable for that negligent conduct. Id.

10

Another similar enunciation of this doctrine is set forth in Section 429 of the Restatement (Second) of Torts (1965), which is captioned "Negligence in Doing Work Which is Accepted in Reliance on the Employer's Doing the Work Himself" and which provides:

> One who employs an independent contractor to perform services for another *which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants*, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

Id. (quoting Section 429). Both Section 267 and Section 429 are estoppel-based. Id. To the extent that Section 429 differs from Section 267 when applied in the hospital context, the primary difference appears to be that the reliance element is less subjective under Section 429. Id.

The Court expressly adopted the formulation of apparent or ostensible agency set forth in the Restatement (Second) of Torts Section 429. Id. at 152. The Court held that, under Section 429, a trier of fact must focus on the reasonableness of the patient's belief that the hospital or its employees were rendering health care. Id. This ultimate determination is made by considering the totality of the circumstances, including the actions or inactions of the hospital, as well as any special knowledge the patient may have about the hospital's arrangements with its physicians. Id. The Court concluded that a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. Id. A hospital generally will be able to avoid liability by providing

11

meaningful written notice to the patient, acknowledged at the time of admission. Id. Under some circumstances, such as in the case of a medical emergency, however, written notice may not suffice if the patient had an inadequate opportunity to make an informed choice. Id. As to the meaning and importance of reliance in this specific context, the Court agreed with cases that hold that if the hospital has failed to give meaningful notice, if the patient has no special knowledge regarding the arrangement the hospital has made with its physicians, and if there is no reason that the patient should have known of these employment relationships, then reliance is presumed. Id.

With this background in mind, we turn to the issue of whether the expiration of the statute of limitations regarding any claim against Dr. Xu or Dr. Harris forecloses Amburgey's claim against the Hospital. We observe that there is no designated evidence suggesting that Amburgey ever brought a claim directly against Dr. Xu or Dr. Harris that was dismissed on the basis of the running of the statute of limitations. The designated evidence also does not reveal a judicial order finding that Dr. Xu and Dr. Harris were not negligent. Further, Amburgey filed the complaint against the Hospital prior to the running of the applicable statute of limitations.

While Indiana has not addressed this specific issue, we observe that some of our sister states have concluded that the running of a statute of limitations with respect to a physician does not preclude a complaint against a hospital on a theory of vicarious liability and apparent authority. See Abshure v. Methodist Healthcare-Memphis Hosps., 325 S.W.3d 98, 112 (Tenn. 2010) (observing that the plaintiffs filed a proper vicarious liability claim against a hospital before their claims against a doctor were extinguished by

operation of law and holding that the subsequent procedural bar of their claims against the doctor did not prevent the plaintiffs from pursuing their timely filed vicarious liability claim against the hospital); Kashishian v. Port, 481 N.W.2d 277, 286-287 (Wis. 1992) (holding that the doctrine of apparent authority could be a basis for a medical malpractice action against a hospital for the negligent acts of independent contractors, that the dismissal of the independent contractor based upon the failure to timely file a notice of claim was not a determination of the physician's negligence, and that such a dismissal was appropriate despite the fact that the suit could be maintained against the hospital), reconsideration denied; Pamperin v. Trinity Mem'l Hosp., 423 N.W.2d 848 (Wis. 1988) (Steinmetz, J., dissenting) (noting that the statute of limitations had run against the negligent doctors and they could not be joined as defendants; the majority in Pamperin allowing the plaintiffs to proceed with their lawsuit against the hospital).

## CONCLUSION

In light of Sword and the foregoing authorities which we find persuasive, as well as our review of the designated evidence in this case, we conclude that the trial court did not err in denying Amburgey's Motion for Partial Summary Judgment and in finding that genuine issues of material fact exist regarding the claim of apparent agency.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

BAKER, J., and KIRSCH, J., concur.

13