# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**JERRY GARAU**
Garau Germano Hanley & Pennington, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

Attorneys for Cardinal Health Systems d/b/a
Ball Memorial Hospital
**EDWARD L. MURPHY, JR.**
**WILLIAM A. RAMSEY**
Murphy Ice & Koeneman LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| DANIELLE HELMS, | ) |
| | ) |
| Appellant-Plaintiff, | ) |
| | ) |
| vs. | )  No. 18A04-1202-CT-70 |
| | ) |
| MAX H. RUDICEL, M.D., OPEN DOOR/BMH | ) |
| HEALTH CLINIC (a division of Cardinal Health | ) |
| Systems), CARDINALHEALTH SYSTEMS, | ) |
| d/b/a BALL MEMORIAL HOSPITAL, ANNA M. | ) |
| STEINBARGER, NP, and EMERGENCY | ) |
| PHYSICIANS OF DELAWARE COUNTY, P.C., | ) |
| | ) |
| Appellees-Defendants. | ) |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1107-CT-32

**April 9, 2013**

**OPINION – FOR PUBLICATION**

**MAY, Judge**

Danielle Helms filed a lawsuit in Delaware Circuit Court (hereinafter "trial court") against Dr. Max Rudicel, the Open Door Health Clinic ("the Clinic"), Cardinal Health Systems d/b/a Ball Memorial Hospital ("BMH"), Nurse Practitioner Anna Steinbarger, and Emergency Physicians of Delaware County for malpractice related to treatment she received during her pregnancy. The Defendants filed a motion for summary judgment because a federal court had already determined Dr. Rudicel and the Clinic were federal employees,[1] and the limitation period during which Helms could have filed suit had run under the Federal Tort Claims Act (FTCA), 28 U.S.C. 2679.

The trial court determined the federal decision was *res judicata* as to negligence claims related to the Clinic or Dr. Rudicel's work there. It also determined BMH was not vicariously liable for actions by the Clinic or by Dr. Rudicel while at the Clinic. The court therefore dismissed the action against the Clinic with prejudice. However, the trial court found a question of fact regarding whether BMH might be vicariously liable for actions at BMH of Dr. Rudicel and Nurse Practitioner Steinbarger.

Helms appeals, arguing (1) the federal decision is not *res judicata* because that court did not address the issue now before us, (2) the medical providers at the Clinic might have been apparent agents of BMH, and (3) BMH might be vicariously liable even though the

---

[1] The federal court's decision explicitly mentioned only Dr. Rudicel and the Clinic. It did not address the Nurse Practitioner or Emergency Physicians, who are named parties in this appeal. The appeal before us arises out of Helms's motion for preliminary determination of law and for partial summary judgment on the limited issue as to whether BMH/Cardinal Health Systems might have some liability for acts of Dr. Rudicel and the Clinic as their apparent principal. The parties do not address the Nurse Practitioner except to the extent she might be included as one of the health care providers who treated Helms at the Clinic. Nor do they address whether acts by Emergency Physicians are implicated by any issues raised in Helms's motion.

Doctor and Clinic are immune from liability. On cross-appeal, BMH challenges the determination BMH might have vicarious liability, arguing BMH told Helms its healthcare providers were independent contractors.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY[2]

In June of 2005, Helms saw Dr. Rudicel at the BMH emergency room. Dr. Rudicel diagnosed Helms' pregnancy and referred her to the Clinic for prenatal care. On multiple occasions between June and December 2005, Helms was treated by Dr. Rudicel or a resident who was working under his supervision.

When Helms went to BMH during this period, she signed a consent form that stated "many of the physicians and other health care providers," (*e.g.,* App. at 187), who treat patients at Cardinal Health System facilities are not employed by BMH, but are independent contractors who have been "granted the privileges of using Cardinal Health System facilities to treat patients." (*Id*.) Dr. Rudicel and Nurse Practitioner Steinbarger were not BMH employees.

A sign at the Clinic during that period read "OPEN DOOR/BMH HEALTH CENTER" and "CARDINAL HEALTH SYSTEMS, PARTNERS IN BILLING." (App. at 66.) Helms's medical records were labeled "Ball Memorial Hospital Obstetrical History/Physical/Prenatal Record." (*Id.* at 79.) Her appointment reminders were from "Open

---

[2] We heard oral argument in Indianapolis on February 18, 2013, before participants in the Indiana State Bar Association Leadership Development Academy. We thank the Academy for joining us, and we commend counsel on the quality of their oral advocacy.

3

Door/BMH Health & Dental Center." (*Id.* at 77.) A patient information handout said Dr. Rudicel was "in charge of the day to day running of the OB clinic," (*id.* at 72), and the Clinic was "part of the Medical Education program at Ball Memorial Hospital" so there would be interns and residents working with Dr. Rudicel. (*Id.*) It said there were nurse practitioners in training from time to time, and that patients might not see Dr. Rudicel at each visit, but he and the residents "do the deliveries." (*Id.*) The residents who saw Helms at the Clinic were in a "residency program through Cardinal Health Ball Memorial Hospital," (*id.* at 118), and BMH paid their salaries.

Helms believed the Clinic was part of BMH and Dr. Rudicel and the residents were employed by BMH. She "assumed," (App. at 66), from the information noted above, that Dr. Rudicel and the interns and residents who cared for her were providing the services "by and through" BMH. (*Id.*)

Helms filed a complaint in October 2007 before the Department of Insurance, alleging negligence in her prenatal care between June and December 2005 resulted in a stillbirth. In December 2007, Helms learned the Clinic was not a division of BMH, but was a federally-supported health care center. The Clinic and its employees were therefore considered federal employees[3] and were immune from suit pursuant to the FTCA. By the time Helms

---

[3] 42 U.S.C. § 233(g)(1)(a) provides an entity deemed a Public Health Service employee, and any:
    employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner . . . shall be deemed to be an employee of the Public Health Service. . . . The remedy against the United States for an entity described in paragraph (4) and any officer, governing board member, employee, or contractor (subject to paragraph (5)) of such an entity who is deemed to be an employee of the Public Health Service pursuant to this paragraph shall be exclusive of any other civil action or proceeding to

discovered these statutes applied, the two-year limitations period for a federal tort claim had expired. Helms brought an action in federal court anyway, and the court granted summary judgment for the United States. *Adkins*[4] v. *United States, acting by & through United States D.H.H.S.*, 1:10-CV-0018-JMS-DML, 2011 WL 666713 (S.D. Ind. Feb. 14, 2011).

In July 2011, Helms moved in the Delaware Circuit Court[5] for partial summary judgment on the question whether the people who treated her at the Clinic were apparent agents of BMH as a matter of law. BMH brought a cross-motion in which it argued the federal court's decision bars Helms from pursuing an action against BMH. The trial court held:

> 1.    [BMH] is not vicariously liable for any act of [the Clinic] or its employees or any act of Dr. Rudicel performed at the Clinic.
> 2.    [BMH] may be vicariously liable for any act of Dr. Rudicel or Nurse Practitioner Steinbarger at BMH. There is a fact question whether the Consent Form given to [Helms] at the Hospital was adequate notice that Dr. Rudicel and N.P. Steinbarger were not Hospital employees or agents when providing care to Helms at the Hospital's Emergency Room.
> 3.    The Motion to Dismiss filed by [the Clinic] is well taken and should be granted. [The Clinic] is dismissed from this action with prejudice.
> 4.    The Order from the Southern District of Indiana on the Motion for Summary Judgment is *res judicata* as to claims of negligence related to [the Clinic] and Dr. Rudicel's actions at the Clinic.
> 5.    [The clinic] and [BMH] are separate entities. [BMH] is not liable for action of the Clinic.

the same extent as the remedy against the United States is exclusive pursuant to subsection (a) of this section.

[4] Adkins was Helms's co-plaintiff.

[5] Ind. Code § 34-18-11-1 provides a court that has jurisdiction over the subject matter and the parties to a proposed complaint filed with the Department of Insurance may preliminarily determine certain affirmative defenses or issues of law or fact and may entertain a motion filed after a proposed complaint is filed but before the medical review panel gives its opinion.

(App. at 11.)

Helms appeals, and BMH cross-appeals.

**DISCUSSION AND DECISION**

When reviewing a grant or denial of summary judgment our review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Omni Ins. Group v. Poage*, 966 N.E.2d 750, 753 (Ind. Ct. App. 2012), *trans. denied.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Id.* All evidence is construed in favor of the opposing party, and all doubts as to the existence of a material issue are resolved against the moving party. *Id.*

 1. *Res Judicata* Effect of Federal Court Decision

Helms learned the Clinic was not a division of BMH, but was a federally-supported health care center, which meant the Clinic and its employees were federal employees and immune from suit pursuant to the FTCA. Helms therefore brought an action in federal court against the United States. The federal court granted summary judgment for the United States. *Adkins*, 2011 WL 666713 at *5.

In granting summary judgment, the federal court said the "central question is whether the statute of limitations on actions brought under the FTCA bars Plaintiffs' claim against the United States," *id.* at *1, then noted any health center that receives federal funds

6

may be deemed an employee of the federal government. *See* 42 U.S.C. § 233(g)(1)(A), (4). Likewise, the employees of such health centers will be deemed federal employees. *Id.* As federal employees, both the federally funded health center and its employees are protected under the [FTCA] for acts in connection with medical or related functions committed within the scope of their employment. *Id.* [The Clinic] was deemed an employee of the Public Health Service as of June 1, 2003, and has continued to be covered by the FTCA, without interruption, since that time. [Dkt. 56–2 at 2, ¶ 7.] Because [the Clinic] and Dr. Rudicel are federal employees, they are protected by sovereign immunity from claims of negligence in the provision of health care services and are, therefore, immune from suit, except under the FTCA.

*Id*.

Helms then brought suit in state court. That court found the federal court order was *res judicata* as to "claims of negligence related to Open Door Clinic and Dr. Rudicel's actions at the Clinic." (App. at 11.) *Res judicata* serves to prevent repetitious litigation of disputes that are essentially the same. *Dawson v. Estate of Ott*, 796 N.E.2d 1190, 1195 (Ind. Ct. App. 2003). The doctrine of *res judicata* includes claim preclusion, which applies when a final judgment on the merits has been rendered, and acts to bar a subsequent action on the same claim between the same parties. *Id.* When claim preclusion applies, all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action. *Id.* Claim preclusion applies when the following four factors are present: (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter now at issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies. *Id.* Actions in state courts that attempt to undermine federal court decisions amount to impermissible collateral attacks. *Id*. at 1196-97.

7

As the federal court did not address the issue now before us -- whether BMH might be liable for actions of its apparent agents – that decision does not bar Helms from pursuing her action against BMH. BMH argues the federal court's decision forecloses any action against BMH based on actions by the Clinic and Dr. Rudicel because the FTCA is Helms's exclusive remedy and the only action that can be brought concerning the acts of the Doctor and Clinic is against the United States. The FTCA provides:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against *the employee or the employee's estate* is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1) (emphasis added). Because the FTCA is an exclusive remedy for torts committed by federal employees acting within the scope of their employment, if recovery is not available against the United States under § 2680, it is not available at all. *Brown v. Armstrong*, 949 F.2d 1007, 1013 (8th Cir. 1991).

The references to FTCA exclusivity are explicitly to the employee of the government, and the federal court found only that the Doctor and Clinic were federal employees. It did not find BMH was a federal employee. While the FTCA precludes further actions against the "employees" -- *i.e.*, the Doctor and the Clinic, we decline to hold the FTCA precludes an action against the employee's apparent principal when that apparent principal has not been

8

adjudicated a government employee covered by the FTCA. *See*, *e.g.*, *Abrams v. Sinon*, 205 N.W.2d 295, 298 (Mich. Ct. App. 1972), *aff'd*, 212 N.W.2d 14 (Mich. 1973) (while the FTCA barred a direct suit against a government employee driver, it did not bar a separate action against the owner of a motor vehicle negligently driven by the government employee). The trial court's determination the federal decision is *res judicata* as to claims of negligence by the Clinic or by Dr. Rudicel while at the Clinic was error.

2.    Apparent Agency

As this state court action against BMH is not precluded by the FTCA, we turn to the question whether there is a genuine issue of fact as to whether Dr. Rudicel and the health care providers who treated Helms at the Clinic were apparent agents of BMH. As there is such an issue, summary judgment for BMH on the question whether it might have vicarious liability for the acts of the Doctor and others at the Clinic was error.

A principal is liable for the acts of his agent that were committed within the scope of the agent's actual or apparent authority. *Pollas v. Hardware Wholesalers, Inc.*, 663 N.E.2d 1188, 1190 (Ind. Ct. App. 1996), *reh'g denied*. Apparent authority refers to a third party's reasonable belief that the principal has authorized the acts of its agent; it arises from the principal's manifestations to a third party and not from the representations or acts of the agent. *Gallant Ins. Co. v. Isaac*, 751 N.E.2d 672, 675 (Ind. 2001). The manifestations can originate from direct or indirect communication, or from advertisements to the community. *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 148 (Ind. 1999).

9

In *Sword*, our Indiana Supreme Court expressly adopted, in the specific context of a hospital setting, the formulation of apparent agency set forth in the Restatement (Second) of Torts. *Id*. at 152. That section provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

Restatement (Second) of Torts § 429 (1965). If, because of the principal's manifestations, a third party reasonably believes that, in dealing with the apparent agent, he is dealing with the principal's servant or agent and exposes himself to negligent conduct because of the principal's manifestations, then the principal may be held liable for that negligent conduct. *Sword*, 714 N.E.2d at 149. Therefore, "a trier of fact must focus on the reasonableness of the patient's belief that the hospital or its employees were rendering health care." *Id*. at 152.

The reasonableness of a patient's belief about who was rendering service is determined by considering the totality of the circumstances, including the actions or inactions of the hospital and any special knowledge the patient may have had about the hospital's arrangements with its physicians. *Id*. A hospital

> will be deemed to have held itself out as the provider of care unless it gives notice to the patient *that it is not the provider* of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. A hospital generally will be able to avoid liability by providing meaningful written notice to the patient, acknowledged at the time of admission.

*Id.* (emphasis added).

10

In *Sword*, our Indiana Supreme Court found issues of fact as to whether a doctor was an apparent agent of the hospital. Nothing in the record indicated the hospital "did anything to put Sword on notice that it was her physician, an independent contractor, who was responsible for her medical care and not the hospital." *Id*. at 152. Nor was this

> a case where plaintiff selected her own anesthesiologist prior to admission, for she specifically testified that she did not know who would administer the epidural until just before the procedure, and if she had any special knowledge of the hospital's employment arrangement with Dr. Luna or with the hospital's general employment practices with respect to physicians, it is not apparent on this record. Finally, [the hospital] held itself out, through an extensive advertising campaign, as a full-service hospital which specializes in obstetric care.

*Id*. at 152-53.

The *Sword* Court noted counsel's reference to a document titled "Condition of Admission and Authorization for Treatment," which counsel asserted informed Sword that her physician was not an employee of the hospital and that the hospital was not liable for any acts of the practicing physician. *Id*. at 152 n.16. The document was not in the record, but our Supreme Court noted that, assuming the references were correct,

> it is far from clear that this document would constitute sufficient notice of the relationship between the hospital and the physician . . . . In fact, it is likely insufficient notice if it is the sole source of notice and if plaintiff did not read or sign that form until she arrived at the hospital in active labor.

*Id*.

Helms notes the evidence that a sign at the Clinic read "OPEN DOOR/BMH HEALTH CENTER" and "CARDINAL HEALTH SYSTEMS, PARTNERS IN BILLING," (App. at 66), her medical records were labeled "Ball Memorial Hospital Obstetrical

11

History/Physical/Prenatal Record," (*id*. at 79), her appointment reminders were from "Open Door/BMH Health & Dental Center," (*id*. at 77), a patient information handout said Dr. Rudicel was "in charge of the day to day running of the OB clinic," (*id*. at 72), the Clinic was "part of the Medical Education program at Ball Memorial Hospital," (*id*.), the residents who saw Helms at the Clinic were in a "residency program through Cardinal Health Ball Memorial Hospital," (*id*. at 118), BMH paid the residents' salaries, and BMH paid Dr. Rudicel a teaching stipend for training the family practice residents. She believed the Clinic was part of BMH and Dr. Rudicel and the residents were employed by BMH, and she assumed Dr. Rudicel and the interns and residents who cared for her were providing the services through BMH. All this, Helms argues, gives rise to a genuine issue of fact as to whether she could have reasonably believed the Doctor and other health care providers at the Clinic were acting on behalf of BMH.

BMH argues the designated evidence does not permit a finding of apparent agency. Some of it -- such as the signage at the Clinic, statements on the Clinic's medical records, the appointment reminders the Clinic sent Helms, and a handout she received from the Clinic -- involves acts by the Clinic, not BMH. BMH correctly notes the apparent authority doctrine is based on manifestations by the principal, not the agent, *see id*. at 148 (the manifestation must be made by the principal to a third party), and argues Helms is relying on manifestations by the Clinic.

But the *Sword* Court instructs us that manifestations sufficient to create an apparent agency may also originate from "indirect communication" or from "advertisements to the

12

community," *id*., and there were such advertisements and indirect communications in the record before us. Advertisements to the community reflected the Clinic's ties to BMH. The Clinic's name was Open Door/BMH Health Clinic, and the records of clinic patients were maintained on BMH forms. These advertisements and "indirect communications" give rise to a genuine issue whether the Clinic and its health care providers might have been apparent agents of BMH.

Nor may we accept BMH's argument Helms could not have reasonably believed the Clinic was an agent of BMH because of the consent forms she signed. A hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient *that it is not the provider* of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. *Sword*, 714 N.E.2d at 152. On multiple occasions Helms signed forms that said "many" of the physicians and other health care providers, (*e.g.,* App. at 187), who treat patients at Cardinal Health System facilities are not employed by BMH, but are independent contractors who have been "granted the privileges of using Cardinal Health System facilities to treat patients." (*Id*.)

A hospital generally will be able to avoid liability by providing meaningful written notice to the patient, acknowledged at the time of admission. *Sword*, 714 N.E.2d at 152. As in *Sword*, the consent forms Helms signed did not provide "meaningful" notice. The notice referred only to "many" of the health care providers at the Clinic, "leaving the patient to guess as to which ones are and which ones are not" hospital employees. (Helms Br. at 12.)

13

BMH, relying on case law addressing adequate notice in other contexts, argues the burden is not on BMH to show Helms knew Dr. Rudicel and the health care providers at the Clinic were not BMH employees -- instead, it argues, the burden was on Helms to inquire about their status. *See*, *e.g.*, *Ashland Pipeline Co. v. Indiana Bell Tel. Co., Inc.*, 505 N.E.2d 483, 487 (Ind. Ct. App. 1987) ("Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained."), *reh'g denied, trans. denied*.

That standard is inconsistent with our Supreme Court's explicit language in *Sword* and therefore cannot be the standard for "meaningful" notice in the case before us. *Sword* instructs us that a hospital will "be deemed to have held itself out as the provider of care unless it gives notice to the patient *that it is not the provider* of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital." 714 N.E.2d at 152 (emphasis added). The BMH consent forms did not do that -- they told Helms only that there was a possibility her physician might not be a BMH employee. As there is a genuine issue whether the Doctor and Clinic might have been apparent agents of BMH, summary judgment for BMH was error.

3.      Hospital's Liability if Apparent Agents Have Immunity

The federal court held Dr. Rudicel and the Clinic were federal employees and immune from suit under the FTCA. But that immunity, which was premised on the running of a limitations period and not on the Doctor's or Clinic's liability for tortious acts, does not

14

extend to BMH.  BMH might therefore be vicariously liable for the acts of its apparent agents even if the agents are individually immune from suit.

We recently so held in *Columbus Reg'l Hosp. v. Amburgey*, 976 N.E.2d 709, 716 (Ind. Ct. App. 2012), *trans. pending*.  There, we determined a complaint against a hospital could go forward under a theory of vicarious liability even though suit against the independent contractor physicians whose acts were at issue was barred by a statute of limitations.  *Id*.

Amburgey argued two independent contractor physicians were apparent agents of the hospital.  The hospital responded that the statute of limitations had run on any claims against the doctors, and there was no basis for liability against the hospital without a basis for liability against the doctors.  We accepted an interlocutory appeal on this question:

> Whether the trial court erred in finding that genuine issues of material fact existed in medical malpractice complaint against the [Hospital] based, in part, on a theory of ostensible agency liability for the alleged acts of two (2) independent contractor physicians where the alleged ostensible agents of the [Hospital] cannot be independently held liable because they have not been named as defendants and the statute of limitations has run against them.

*Id.* at 713.

We determined an action against the hospital was not precluded:

> [W]e turn to the issue of whether the expiration of the statute of limitations regarding any claim against Dr. Xu or Dr. Harris forecloses Amburgey's claim against the Hospital.  We observe that there is no designated evidence suggesting that Amburgey ever brought a claim directly against Dr. Xu or Dr. Harris that was dismissed on the basis of the running of the statute of limitations.  The designated evidence also does not reveal a judicial order finding that Dr. Xu and Dr. Harris were not negligent.  Further, Amburgey filed the complaint against the Hospital prior to the running of the applicable statute of limitations.
>     While Indiana has not addressed this specific issue, we observe that some of our sister states have concluded that *the running of a statute of*

15

*limitations with respect to a physician does not preclude a complaint against a hospital on a theory of vicarious liability and apparent authority. See Abshure v. Methodist Healthcare–Memphis Hosps.,* 325 S.W.3d 98, 112 (Tenn. 2010) (observing that the plaintiffs filed a proper vicarious liability claim against a hospital before their claims against a doctor were extinguished by operation of law and holding that the subsequent procedural bar of their claims against the doctor did not prevent the plaintiffs from pursuing their timely filed vicarious liability claim against the hospital); *Kashishian v. Port,* 167 Wis.2d 24, 481 N.W.2d 277, 286–287 (1992) (holding that the doctrine of apparent authority could be a basis for a medical malpractice action against a hospital for the negligent acts of independent contractors, that the dismissal of the independent contractor based upon the failure to timely file a notice of claim was not a determination of the physician's negligence, and that such a dismissal was appropriate despite the fact that the suit could be maintained against the hospital), *reconsideration denied; Pamperin v. Trinity Mem'l Hosp.,* 144 Wis.2d 188, 423 N.W.2d 848 (1988) (Steinmetz, J., dissenting) (noting that the statute of limitations had run against the negligent doctors and they could not be joined as defendants; the majority in *Pamperin* allowing the plaintiffs to proceed with their lawsuit against the hospital).

*Id*. at 715-16 (emphasis added).

We acknowledge the decisions cited by BMH that hold, in other contexts, that a principal cannot be vicariously liable if an action could not be maintained against the tortfeasor agent.[6] *See, e.g*., *Comer-Marquardt v. A-1 Glassworks, LLC*, 806 N.E.2d 883, 887 (Ind. Ct. App. 2004). Those decisions are distinguishable. For example, in *Comer-Marquardt* we held:

> [U]nder the doctrine of *respondeat superior*, a master or principal is chargeable with, and liable for, any tortious act committed by his servant or agent while such servant or agent is acting in the course of his employment and

---

[6] BMH also argues *Amburgey* can be distinguished. We noted in *Amburgey* there was no designated evidence that Amburgey ever brought a claim directly against the independent contractor doctors that was dismissed on statute of limitations grounds, there was no judicial order finding the doctors were not negligent, and Amburgey sued the Hospital before the applicable statute of limitations had run. Those factual differences do not require a different result in the case before us. Helms could not have brought a claim directly against the Doctor and Clinic because they were immune under the FTCA.

in the line of his duty. Conversely, if the servant or agent is released of liability, no liability can be imputed to the principal. Thus, it is axiomatic that a judgment in favor of an employee requires judgment in favor of his employer when the employer's liability is predicated solely upon the acts of said employee.

*Id.* (citations and internal quotation omitted). In the case before us, there was no judgment in favor of an employee *as to liability* as there was in *Comer-Marquardt*; there could not have been, as Dr. Rudicel and Clinic had federal immunity.

Similarly, in *Grzan v. Charter Hosp. of Nw. Indiana*, 702 N.E.2d 786, 792 (Ind. Ct. App. 1998), the agent, a mental health counselor, was released from liability when he won summary judgment in a malpractice suit against him. Therefore, no negligence could be imputed to the principal, a hospital for which the counselor worked. We said: "Because we have concluded that the trial court properly entered summary judgment in favor of [a mental health counselor] *on Grzan's claims of malpractice* and negligence, Charter [Hospital] cannot be held liable under the doctrine of *respondeat superior*." *Id.* (emphasis added).

As the suit against the Doctor and Clinic in the case before us was, as in *Amburgey*, barred by a statute of limitations and not by a judgment regarding their allegedly tortious acts, we find *Amburgey* controls. Summary judgment for BMH premised on the immunity of its alleged apparent agents was therefore error.

4.      Cross-Appeal Issue -- The Hospital's Vicarious Liability

The trial court correctly found BMH might be vicariously liable for acts by Dr. Rudicel or Nurse Practitioner Steinbarger while at the hospital: "There is a fact question whether the consent form given to Plaintiff at the Hospital was adequate notice that [the

17

Doctor and nurse] were not Hospital employees or agents" when they treated Helms at the emergency room. (App. at 11.) As we have explained above, there is a genuine issue whether the BMH consent form provided "meaningful" notice in light of the *Sword* requirement the hospital tell the patient "*it is not the provider* of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital." 714 N.E.2d at 152 (emphasis added). BMH's notice that "many" providers are independent contractors does not appear to satisfy that requirement, and the trial court correctly found there was a genuine issue as to the adequacy of notice.

### CONCLUSION

As the federal decision is not *res judicata* as to BMH's potential liability as the Doctor and Clinic's apparent principal and there is a fact question as to such apparent agency, summary judgment for BMH was error. The trial court correctly found BMH might be vicariously liable for any act of Dr. Rudicel or Nurse Practitioner Steinbarger at BMH. We accordingly affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

ROBB, C.J., and PYLE, J., concur.