

FILED
Mar 31 2016, 8:35 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

Robert Prescott Ford
Jeffersonville, Indiana

Tyson P. Schroeder
Boehl Stopher & Graves, LLP
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Prescott Ford,

*Appellant-Plaintiff,*

v.

Dr. Shad Jawaid, M.D. and
Floyd Memorial Hospital &
Health Services,

*Appellee-Defendants.*

March 31, 2016

Court of Appeals Cause No.
22A04-1506-CT-575

Appeal from the Floyd Circuit
Court

The Honorable Susan L. Orth,
Judge

Trial Court Cause No.
22C01-1404-CT-578

**Barnes, Judge.**

## Case Summary

[1]     Robert Ford appeals the trial court's grant of summary judgment to Floyd

Memorial Hospital & Healthcare Services ("Hospital").  We affirm in part,

reverse in part, and remand.

# Issues

Ford raises three issues, which we restate as:

    I.      whether the trial court properly struck portions of Ford's designated evidence;

    II.    whether the trial court properly granted the Hospital's motion for summary judgment regarding Ford's negligence claim; and

    III.   whether the trial court properly granted the Hospital's motion for summary judgment regarding Ford's vicarious liability claim.

# Facts

On Memorial Day weekend in 2009, Ford began experiencing pain in and swelling of his leg, and an immediate care center sent him to the Hospital to receive an ultrasound. At the Hospital, Ford was diagnosed with a large blood clot in his leg. He was admitted to the Hospital, and his treating physician was Dr. Shad Jawaid, who was an independent contractor hospitalist physician at the Hospital. Ford was treated and released two days later. However, Ford continued to have problems with the blood clot and received additional treatment at a different hospital. He continues to have health issues as a result of the blood clot.

Ford filed a proposed medical malpractice complaint with the Indiana Department of Insurance against Jawaid and the Hospital in September 2011, and he amended the complaint in February 2013. The amended complaint alleged negligence by Jawaid, negligence by the Hospital, negligent infliction of

emotional distress, and vicarious liability of the Hospital for Jawaid's conduct. The medical review panel issued a unanimous opinion on January 28, 2014, and concluded that: (1) Jawaid failed to comply with the appropriate standard of care and his conduct was a factor in Ford's injuries and damages; and (2) the evidence did not support the conclusion that the Hospital failed to comply with the appropriate standard of care and the Hospital's conduct was not a factor in Ford's injuries and damages.

[5] In April 2014, Ford filed a medical malpractice complaint against Jawaid and the Hospital. The Hospital filed a motion for summary judgment regarding both Ford's negligence and vicarious liability claims. The Hospital argued that the medical review panel opinion was sufficient to satisfy the Hospital's initial burden of demonstrating no genuine issue of material fact and that the burden then shifted to Ford to designate evidentiary matter to demonstrate a genuine issue of fact. Ford responded and argued that a genuine issue of material fact existed because the panel opinion was "confusing and obviously in direct conflict with the opinion rendered against" Jawaid. App. p. 64. Ford acknowledged that he did not have expert testimony from a panel member or another doctor but argued that the Hospital was negligent for failing to adopt an appropriate rule or policy regarding its hospitalists. Ford also filed a designation of evidence in opposition to the Hospital's motion for summary judgment.

[6] The Hospital filed a motion to strike portions of Ford's designated evidence. Specifically, the Hospital moved to strike: (1) portions of Exhibit 4 that

included medical literature regarding the treatment of deep vein thrombosis; (2) attachments to Exhibit 5, which included copies of web pages obtained from the internet; (3) attachments to Exhibit 6, which included medical literature and/or copies of web pages; (4) Exhibit 8, which was the opinion of a medical review panel in an unrelated matter; (5) Exhibit 10, which was copies of web pages; (6) Exhibit 11, which was a web article; and (7) Exhibits 14, 15, 16, and 17, which are portions of a legal treatise, policies of an unrelated hospital, and other medical literature. The trial court granted the Hospital's motion to strike.

[7] Ford also filed a motion for partial summary judgment with respect to his vicarious liability claim. The Hospital filed a response and designated evidence that Jawaid was an independent contractor for the Hospital, not an employee of the Hospital. The Hospital then filed an additional motion to strike some of Ford's evidence designated in support of his motion for partial summary judgment, which had also been designated in support of his response to the Hospital's motion for summary judgment. Specifically, the Hospital moved to strike Exhibits 2, 3, 4, and 5, which are copies of web pages. The trial court granted the Hospital's motion to strike.

[8] The trial court granted the Hospital's motion for summary judgment and entered final judgment in favor of the Hospital on all issues pursuant to Indiana Trial Rule 54(B). Ford filed a motion to correct error, which the trial court denied. Ford now appeals.

# Analysis

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56. We liberally construe all designated evidentiary material in a light most favorable to the non-moving party to determine whether there is a genuine issue of material fact. *Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009). The party that lost in the trial court has the burden of persuading the appellate court that the trial court erred. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court. *Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001).

## I. Motions to Strike

Ford first argues that the trial court abused its discretion by granting the Hospital's motions to strike certain parts of his designated evidence. The trial court has broad discretion in ruling on the admissibility of evidence. *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct. App. 2005). This discretion extends to rulings on motions to strike affidavits on the grounds that they fail to comply with the summary judgment rules. *Id.*

In ruling on a motion for summary judgment, the trial court will consider only properly designated evidence. *Seth v. Midland Funding, LLC*, 997 N.E.2d 1139, 1141 (Ind. Ct. App. 2013). Under Indiana Trial Rule 56(E),

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is

competent to testify to the matters stated therein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

"Unsworn statements and unverified exhibits do not qualify as proper Rule 56 evidence." *Stafford v. Szymanowski*, 31 N.E.3d 959, 964 (Ind. 2015); *see also Smith v. Delta Tau Delta, Inc.*, 9 N.E.3d 154, 159 (Ind. 2014); *Indiana Univ. Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 858 (Ind. 2000).

[12] The designated documents at issue here consist of copies of medical literature, copies of web pages and web articles, the opinion of a medical review panel in an unrelated case, portions of a legal treatise, and policies of an unrelated hospital. Each of these documents was unsworn and unverified. Consequently, the trial court properly granted the Hospital's motions to strike these documents.[1]

## II. Negligence Claim

[13] Ford argues that the trial court erred by granting the Hospital's motion for summary judgment on his claim that the Hospital was directly liable for

---

[1] In support of his argument, Ford relies on *Reeder v. Harper*, 788 N.E.2d 1236 (Ind. 2003). In *Reeder*, our supreme court held "an affidavit that would be inadmissible at trial may be considered at the summary judgment stage of the proceedings if the substance of the affidavit would be admissible in another form at trial." *Reeder*, 788 N.E.2d at 1241-42. We do not find *Reeder* applicable because the documents at issue here were entirely unsworn and unverified, not part of an affidavit.

negligence. In addressing the sufficiency of a medical malpractice action based upon negligence, the plaintiff must establish: 1) a duty on the part of the defendant in relation to the plaintiff; 2) failure on the part of the defendant to conform to the requisite standard of care required by the relationship; and 3) an injury to the plaintiff resulting from that failure. *Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005). Health care providers must exercise the degree of skill and care ordinarily possessed and exercised by a reasonably skillful and careful practitioner under the same or similar circumstances. *Id.* To establish the applicable standard of care and to show a breach of that standard, a plaintiff must generally present expert testimony. *Id.*

[14] In medical malpractice cases, a unanimous opinion of the medical review panel that health care provider did not breach the applicable standard of care is ordinarily sufficient to establish prima facie evidence negating the existence of a genuine issue of material fact entitling the health care provider to summary judgment. *Stafford*, 31 N.E.3d at 961. Consequently, in such situations, the burden shifts to the plaintiff, who may rebut with expert medical testimony. *Id.*

[15] Here, the medical review panel found that the evidence did not support the conclusion that the Hospital failed to comply with the appropriate standard of care and the Hospital's conduct was not a factor in Ford's injuries and damages. As a result, in response to the Hospital's motion for summary judgment, Ford was required to rebut this finding with expert medical testimony demonstrating that the Hospital breached the applicable standard of

care.[2] Ford failed to designate any such expert medical testimony. Consequently, the trial court properly granted the Hospital's motion for summary judgment on Ford's negligence claim.[3] *See, e.g., Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1191 (Ind. Ct. App. 2003), *trans. denied*.

### III. Vicarious Liability

[16] Ford also brought a vicarious liability claim against the Hospital, and the trial court granted summary judgment to the Hospital. The Hospital argues that summary judgment was proper because of the medical review panel's opinion in favor of the Hospital and because Jawaid was an independent contractor.

[17] Our supreme court addressed vicarious liability of a hospital for actions of an independent contractor physician in *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142 (Ind. 1999). "Vicarious liability is 'indirect legal responsibility.'" *Sword*, 714 N.E.2d at 147 (quoting *Black's Law Dictionary* 1404 (5th ed. 1979)). "It is a legal fiction by which a court can hold a party legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer." *Id.* Courts employ various legal doctrines to hold people vicariously liable, including respondeat

---

[2] There is no argument that the "common knowledge" exception applies to the direct negligence claim. *See Boston v. GYN, Ltd.*, 785 N.E.2d 1187, 1191 (Ind. Ct. App. 2003).

[3] Ford argues that the Hospital's panel submission was defective and prejudicial and that, as a result, the trial court should have stricken the medical review panel's opinion in favor of the Hospital. Ford did not present this argument to the trial court, and it is waived. *See Akiwumi v. Akiwumi*, 23 N.E.3d 734, 741 (Ind. Ct. App. 2014) (holding that a party generally waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court).

superior, apparent or ostensible agency, agency by estoppel, and the non-delegable duty doctrine. *Id.*

[18] The court in *Sword* noted that, "In the hospital setting, Indiana courts have long followed the general rule that hospitals could not be held liable for the negligent actions of independent contractor physicians." *Id.* at 149. The court, however, observed that, "In the area of hospital liability, there has been an ongoing movement by courts to use apparent or ostensible agency as a means by which to hold hospitals vicariously liable for the negligence of some independent contractor physicians." *Id.* at 150.

[19] Ultimately, our supreme court adopted the formulation of apparent or ostensible agency set forth in the Restatement (Second) of Tort Section 429, which provides:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

*Id.* at 149, 152. The court held:

> Under Section 429, as we read and construe it, a trier of fact must focus on the reasonableness of the patient's belief that the hospital or its employees were rendering health care. This ultimate determination is made by considering the totality of the circumstances, including the actions or inactions of the hospital,

as well as any special knowledge the patient may have about the hospital's arrangements with its physicians. We conclude that a hospital will be deemed to have held itself out as the provider of care unless it gives notice to the patient that it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital. A hospital generally will be able to avoid liability by providing meaningful written notice to the patient, acknowledged at the time of admission. Under some circumstances, such as in the case of a medical emergency, however, written notice may not suffice if the patient had an inadequate opportunity to make an informed choice.

*Id.* at 152 (internal citations omitted). "[I]f the patient has no special knowledge regarding the arrangement the hospital has made with its physicians, and if there is no reason that the patient should have known of these employment relationships, then reliance is presumed." *Id.*

[20] We first address whether Ford's failure to designate opposing expert testimony in light of the medical review panel's opinion in favor of the Hospital warranted a grant of summary judgment regarding his vicarious liability claim. Given the *Sword* analysis, such vicarious liability claims do not seem to fall within the purview of the medical review panel. *See Helms v. Rudicel*, 986 N.E.2d 302, 305 n.1 (Ind. Ct. App. 2013) (addressing a vicarious liability claim by way of a motion for preliminary determination), *trans. denied*; *Columbus Regional Hosp. v. Amburgey*, 976 N.E.2d 709 (Ind. Ct. App. 2012) (discussing a vicarious liability claim against a hospital and noting that that medical review panel found "a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court or jury"), *trans. denied*; *see also Harper v. Hippensteel*,

994 N.E.2d 1233, 1236 (Ind. Ct. App. 2013) ("Where, as here, the trial court is asked to determine whether, given a seemingly undisputed set of facts, a physician-patient relationship existed, the question is a legal question for the court and is not reserved for the medical review panel."). Consequently, we conclude that Ford's lack of designated expert testimony was not fatal to his vicarious liability claim.

[21] We next address Ford's argument that Jawaid was an employee, not an independent contractor, of the Hospital. The Hospital designated the affidavit of Angela Mead, Accreditation and Risk Manager at the Hospital, who stated that Jawaid was not an employee of the Hospital. Rather, according to Mead, Jawaid "practiced medicine there as an independent contractor physician." App. p. 369. Ford cited no properly designated evidence that Jawaid was anything other than an independent contractor. As a result, it is necessary to perform the *Sword* analysis.

[22] Ford next argues that he was entitled to summary judgment because the "emergency room" exception is applicable here. The court in *Sword* held, "Under some circumstances, such as in the case of a medical emergency, however, written notice may not suffice if the patient had an inadequate opportunity to make an informed choice." *Sword*, 714 N.E.2d at 152. Ford argues that he was referred to the Hospital by an immediate care center, that he "realistically had no opportunity to seek treatment elsewhere," and that he "was forced to rely" on the Hospital. Appellant's Br. p. 21. However, as the Hospital points out, there is no evidence to suggest that Ford was incapacitated

and, in fact, drove himself to the Hospital and signed the patient registration form. There are no genuine issues of material fact demonstrating that Ford had an inadequate opportunity to make an informed choice.

[23] Finally, Ford argues that he did not receive meaningful notice that Jawaid was an independent contractor. Ford designated his affidavit, which stated that he was unaware that Jawaid was an independent contractor and he believed Jawaid to be an employee of the hospital. The Hospital designated evidence that Ford signed a patient registration form, which provided, in part:

> I acknowledge that the health care professionals who attend to me, including but not limited to anesthesiologists, radiologists, pathologists, emergency room physicians, and provide and perform such medical and surgical care, tests, procedures, drugs and other services and supplies may be independent contractors and not employees or agents of Floyd Memorial Hospital and Health Services.

App. p. 371. The issue is whether the patient registration form gave Ford meaningful notice that Jawaid was an independent contractor.

[24] We addressed a similar issue in *Helms*, 986 N.E.2d at 313-14. There, on multiple occasions, the patient signed forms that said "many" of the physicians and other health care providers were independent contractors. We concluded that the notice "referred only to 'many' of the health care providers at the Clinic, 'leaving the patient to guess as to which ones are and which ones are not' hospital employees." *Helms*, 986 N.E.2d at 311 (quoting *Sword*, 714 N.E.2d at 152). We concluded there was a genuine issue regarding whether the

consent form provided "meaningful" notice "in light of the *Sword* requirement the hospital tell the patient 'it is not the provider of care and that the care is provided by a physician who is an independent contractor and not subject to the control and supervision of the hospital.'" *Id.* at 313-14 (quoting *Sword*, 714 N.E.2d at 152). We held that the hospital's notice "that 'many' providers are independent contractors [did] not appear to satisfy that requirement, and the trial court correctly found there was a genuine issue as to the adequacy of notice." Id. at 314.

[25] Similarly, here, the Hospital's notice merely provided that the physicians "may be independent contractors." App. p. 371. We conclude that there are genuine issues of material fact regarding whether the notice to Ford was meaningful and whether the Hospital is vicariously liable. Consequently, the trial court erred by granting the Hospital's motion for summary judgment regarding Ford's vicarious liability claim. Likewise, Ford was not entitled to summary judgment on this issue given the genuine issues of material fact.

## Conclusion

[26] The trial court properly granted the Hospital's motions to strike and the Hospital's motion for summary judgment regarding Ford's negligence claim. However, genuine issues of material fact exist regarding Ford's vicarious liability claim. Consequently, the trial court erred by granting summary judgment to the Hospital on that claim. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

Robb, J., and Altice, J., concur.